COMMONWEALTH vs. FREDERICK L. KLINE.

Middlesex. November 21, 1984. — April 26, 1985.

Present: ARMSTRONG, KAPLAN, & SMITH, JJ.

*Motor Vehicle*, Homicide. *Negligence*, Motor vehicle. *Collateral Estoppel.*
*Practice, Criminal,* Collateral estoppel.

At the jury trial of a complaint charging homicide by motor vehicle, the
defendant's acquittal in an earlier bench trial on a separate complaint,
arising out of the same vehicular collision and charging him with failing
to obey a traffic signal, did not collaterally estop the Commonwealth
from using in evidence a statement by the defendant to police that a
traffic light facing him was red when he approached the intersection in
which the collision occurred, where nothing in the record of the first
trial reflected that the judge had found either that the defendant had not
made the statement or that the light was not red at that time. [717-719]
In the circumstances of the jury trial of a complaint charging homicide by
motor vehicle, the defendant was not entitled to inform the jury that, in
a bench trial of charges arising from the same incident, he had been
acquitted on a separate complaint for failure to obey a traffic signal. [719]
Evidence at the trial of a complaint charging homicide by motor vehicle
was sufficient for the jury to conclude beyond a reasonable doubt that
the defendant, while operating an ambulance, failed to exercise that
degree of care, diligence and safety that an ordinary prudent person
would exercise under similar circumstances. [720]

COMPLAINT received and sworn to in the Newton Division
of the District Court Department on April 11, 1983.

On appeal to the jury session of the Cambridge Division,
the case was tried before *Arthur Sherman, J.*

*Philip D. Moran* for the defendant.

*Natalea Skvir*, Assistant District Attorney, for the Common-
wealth.

SMITH, J. The defendant was charged in a District Court on
three complaints: homicide by a motor vehicle (G. L. c. 90,
§ 24G), failure to conform to directions of a traffic signal G. L.

c. 89, § 9), and operating a motor vehicle without a registration (G. L. c. 90, § 11). All three charges arose out of a collision between two motor vehicles in Newton on March 21, 1983. One of the vehicles involved in the incident, an ambulance, was operated by the defendant; the other vehicle, a Volkswagen, was driven by the victim.

After a bench trial in the District Court the defendant was found guilty on the complaint that charged him with vehicular homicide but not guilty on the other two complaints. He appealed his conviction to the jury-of-six session of the District Court, and he was found guilty. On appeal he claims that the judge erred in denying his motion in limine and his motion for a required finding of not guilty.

We recite the facts as they could have been found by the jury. On March 21, 1983, at approximately 8:30 P.M., two police officers were dispatched to the intersection of Washington Street and the Grove Street ramp off Route 128 in Newton to investigate a motor vehicle accident. It was dark, raining heavily, and the roads were wet. The officers observed a Volkswagen, with considerable damage on the driver's side, stopped in the eastbound lane of Washington Street. They also noted an ambulance, with damage on its left front, stopped opposite the Volkswagen in the westbound lane of Washington Street. From the location of the debris at the scene, the officers concluded that the vehicles had collided within the intersection.

The defendant told the police that he had been transporting a patient in the ambulance but that it was not an emergency run. He stated that he had been traveling on Washington Street at approximately 35 miles per hour, the posted speed limit. He further stated that, as he approached the intersection where the accident occurred, the traffic light facing him was red. He saw the Volkswagen coming down the Grove Street ramp. At that point, the patient caused a disturbance in the rear of the ambulance. The defendant looked back through the rear view mirror and the collision occurred within the intersection. The sequence of the lights at the intersection was such that the Grove Street southbound ramp has a green light whenever the Washington Street light is red.

1. *Denial of motion in limine*. At the bench trial the Commonwealth's theory of culpability of the defendant on the vehicular homicide case rested on his negligent operation of the ambulance. *Commonwealth* v. *Jones*, 382 Mass. 387, 389 (1981). After he was acquitted of the charge of failing to conform to directions of a traffic signal and before his jury trial on the vehicular homicide complaint, the defendant filed a motion in limine. The motion requested the exclusion of all evidence concerning the traffic light at the intersection. Specifically, the defendant sought the exclusion of his statement that the traffic light facing him was red as he approached the intersection.[1] The motion was denied. The defendant argues that as a result of his acquittal on the complaint charging him with failure to conform to the directions of a traffic signal, the Commonwealth was collaterally estopped from using his statement about the traffic light on the vehicular homicide charge. The Commonwealth claims that the defendant's statement regarding the traffic light was relevant and admissible on the question of the defendant's negligence, and not barred by collateral estoppel.

The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* v. *Swenson*, 397 U.S. 436, 443 (1970). Although the concept of collateral estoppel is easy to state, "in application, it can be a slippery concept indeed."[2] *United States* v. *Mock*, 604 F.2d 341, 343 (5th Cir.

---

[1] In addition, the defendant requested in his motion that the Commonwealth not be permitted to introduce evidence of the sequence of the red lights at the intersection. The defendant, on appeal, does not challenge the judge's ruling on that part of the motion in limine.

[2] The vagaries of the application of collateral estoppel and double jeopardy to various situations have caused one judge to comment on those subjects in Churchillian prose. See *United States* v. *Larkin*, 605 F.2d 1360, 1361 (5th Cir. 1979), where Judge Goldberg stated the court's opinion in the following manner:

> "This case involving the arcane principles of double jeopardy and collateral estoppel is not susceptible of bright-letter law or black-letter law; the areas are most often gray, and dimly to be seen. Needless

1979). The doctrine may bar a subsequent prosecution,[3] or, more relevant to our analysis, it may permit the subsequent prosecution to proceed but bar the introduction of certain facts that were determined in the defendant's favor at the first trial. *Commonwealth* v. *Benson*, 389 Mass. 473, 478 (1983). Thus, facts established against the Commonwealth in the first trial "may not be used in the second trial either as ultimate or as evidentiary facts." *United States* v. *Mock*, 604 F.2d at 343. Here, the defendant claims that, because he was acquitted of failing to conform to the directions of a traffic signal, the Commonwealth was collaterally estopped from using any evidence concerning the traffic signal at the second trial. There was no error in the denial of the motion.[4]

Once collateral estoppel has been raised, we must "decide exactly what issues were, or should have been, determined at the first trial". *Commonwealth* v. *Benson*, 389 Mass. at 478. In making that determination we must "examine the record of [his] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational [fact finder] could have grounded [his] verdict upon an issue other than that which the defendant seeks to foreclose

---

to say, one entering this field must do so with trepidation.

"As a result, the battles in these areas are pockmarked by assaults, retreats, and advances. In both fields we look for terrain that has been fought over, and cast our eyes about for tactical maneuvers in order to discover some grand design which really and in fact can fit the particular case before us for judgment and disposition. But we find no classic to compare to the Clausewitz of military fame. We too are thus hesitant to enter the field, but we shall do so bravely. And, at analysis' end, we are confident that contemporary jurisprudence justifies our conclusion."

[3] An example of collateral estoppel barring the second prosecution is shown in *Ashe* v. *Swenson, supra,* where the Supreme Court determined that a prior acquittal for the robbery of one victim barred a second prosecution for the robbery of another victim involved in the same incident because the critical issue of the robber's identity had been decided in the earlier prosecution.

[4] The Commonwealth questions whether the doctrine of collateral estoppel can be raised by a defendant who has brought about a second trial by exercising his right to a trial de novo. The defendant, here, does not contend that the doctrine bars his second trial. Rather, he is claiming that collateral estoppel foreclosed relitigation of a fact decided in the defendant's favor at the first and final trial on a separate charge. In this instance, we rule that a defendant can raise the doctrine of collateral estoppel.

from consideration." *Ashe* v. *Swenson*, 397 U.S. at 444. The issue of fact determined at the bench trial was that the defendant did not fail to conform to the directions of a traffic signal. There is nothing in this record that shows that the judge determined as a fact that (1) the defendant never made the statement about the traffic signal, or (2) that the traffic light was not red as the defendant approached the intersection.[5] The issue in the second trial was whether the defendant was negligent in the operation of the ambulance at the time of the collision. Although the Commonwealth was foreclosed from relitigating the issue whether the defendant went through the red light, it was not barred from showing the status of the traffic signal as the defendant approached the intersection. "The principles of collateral estoppel are inapplicable to the evidentiary facts of the prior trial because of the tenuous and speculative relationship between the result in the prior proceeding and the evidence proposed to be presented in the subsequent prosecution." *Commonwealth* v. *Benson*, 389 Mass. at 481-482. *Commonwealth* v. *Cannavo*, 16 Mass. App. Ct. 977, 979 (1983).

The defendant contends that, in any event, he should have been permitted to inform the jury of his acquittal of the charge of failing to conform to the directions of a traffic signal. There was no error. The elements of the charge on which he was acquitted differed markedly from the elements involved in the vehicular homicide charge. See *Commonwealth* v. *Lopez*, 383 Mass. 497, 499-500 (1981); *Commonwealth* v. *Benson*, 389 Mass. at 479. Consequently, evidence of his acquittal was of questionable relevance and might have confused the jury. *Commonwealth* v. *Lopez, supra* at 500 n.2. In addition, we have a truncated record of the jury trial. We do not have the record of the defendant's cross-examination, the arguments of counsel to the jury, or the judge's charge. Thus, we have no basis for determining if there was prejudice to the defendant as a result of the judge's action. Certainly, on this record the judge was correct in denying the defendant's request to inform the jury of his acquittal.

---

[5] The judge, in finding the defendant not guilty, stated that he had "not heard sufficient evidence . . . to say [that] the defendant went through a red light."

*2. Denial of required finding of not guilty.* In order to prove its theory of culpability under G. L. c. 90, § 24G, it was only necessary for the Commonwealth to prove ordinary negligence. *Commonwealth* v. *Jones*, 382 Mass. at 389. Viewing the evidence in the light most favorable to the Commonwealth, the jury could find that the defendant was driving an ambulance at the maximum speed permitted on that roadway. It was dark, raining heavily, and the road surface was wet. The jury could also find from the evidence that as the defendant was approaching the intersection he was aware of the Volkswagen also coming toward the same intersection with the traffic light in its favor. The jury could conclude that the defendant at a critical moment took his eyes off the road with the result that the collision occurred. Therefore, the jury could have concluded beyond a reasonable doubt that the defendant failed "to exercise that degree of care, diligence and safety that an ordinarily prudent person would exercise under similar circumstances." *Goldstein* v. *Gontarz*, 364 Mass. 800, 805 (1974). We note that the defendant does not rely on G. L. c. 89, § 7B, as inserted by St. 1964, c. 182,[6] as the basis for his claim that the judge erred in denying his motion for a required finding.

*Judgment affirmed.*

---

[6] General Laws c. 89, § 7B, states in pertinent part: "[T]he driver of an ambulance shall be subject to the provisions of any statute, rule, regulation, ordinance or by-law relating to the operation . . . of vehicles, except that . . . the driver of an ambulance, in an emergency and while in performance of a public duty or while transporting a sick or injured person to a hospital or other destination where professional medical services are available, . . . may drive such vehicle through an intersection of ways contrary to any traffic signs or signals regulating traffic at such intersection if he first brings such vehicle to a full stop and then proceeds with caution and due regard for the safety of persons and property. . . ."