## COMMONWEALTH *vs.* LOUIS ROYCE & others.[1]

Suffolk. February 14, 1985. — June 14, 1985.

Present: BROWN, DREBEN, & WARNER, JJ.

*Conspiracy. Search and Seizure,* Locker, Expectation of privacy. *Practice, Criminal,* Argument by prosecutor. *Collateral Estoppel. Constitutional Law,* Double jeopardy. *Error,* Harmless.

At the trial of an indictment charging a conspiracy to commit a robbery, evidence that one of the defendants did not participate in the robbery because of an injured leg did not entitle him to a directed verdict, where there was evidence that he had agreed and planned with the others to commit the robbery. [222-223]

At a hearing on a motion by a criminal defendant to suppress evidence found in a locker located in the defendant's grandparents' apartment building and opened by police with a key found in a search of the defendant's apartment, the judge did not err in refusing to credit the defendant's testimony and that of the superintendent of the building in which the locker was located, and in concluding that the defendant had no legitimate expectation of privacy in the locker. [223-225]

No substantial risk of a miscarriage of justice was presented at the trial of a conspiracy case as a result of the prosecutor's closing argument, in which he referred to the defendants as "career criminals," where the judge, after consulting defense counsel, gave specific curative instructions to the jury to which counsel made no objection. [225-226]

A defendant's acquittal on charges of robbery while armed and masked, and assault with intent to rob while armed, did not bar, on collateral estoppel principles, the introduction of evidence, at his subsequent trial on a charge of conspiracy to commit the robbery, of the defendant's planning and preparation for the robbery, of incriminatory items found in his apartment and locker, and of the occurrence of the robbery. [226-228]

Where a defendant charged with conspiracy to commit a robbery had previously been acquitted of the substantive offenses on which the conspiracy charge was based, it was error at the trial of the conspiracy case to admit evidence of the defendant's participation in the robbery; how-

[1] Stephen Rossetti and Joseph A. Sousa.

ever, in light of overwhelming admissible evidence of the defendant's complicity in the conspiracy, the error was harmless. [228-229]

At the trial of an indictment charging conspiracy to commit a robbery, the judge did not err in allowing the Commonwealth's motion in limine barring the defendants from offering evidence that one of the defendants had been previously acquitted of participating in the robbery which had been the object of the conspiracy. [229-230]

INDICTMENT found and returned in the Superior Court Department on December 22, 1980.

A motion to suppress evidence was heard by *James P. Donohue*, J., and the case was tried before *Joseph Ford*, J.

*Walter T. Healy* for Stephen Rossetti.

*John Salsberg* for Joseph A. Sousa.

*Kevin J. O'Dea* for Louis Royce.

*Robin A. Pearl*, Assistant District Attorney, for the Commonwealth.

WARNER, J. The defendants were convicted of conspiracy to assault and to rob employees of Brink's, Inc. Their appeals raise a common claim of prosecutorial misconduct and other discrete issues.

1. *Royce's motions for a required finding of not guilty.* At the close of the Commonwealth's evidence and again at the close of all of the evidence, Royce's motions for a required finding of not guilty were denied. On appeal, Royce argues that it was error to deny the motion presented at the close of the Commonwealth's case; he does not argue that the Commonwealth's case deteriorated from that time to the close of all of the evidence. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 & n.1 (1976). In reviewing the denial of the motion "we must consider and determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

Royce argues that, since the Commonwealth did not offer evidence that he participated in the final preparatory stages of

the robbery or in its commission, it was established that he withdrew from the conspiracy. Reviewing the evidence in the light most favorable to the Commonwealth, a jury could have found that Royce suggested the idea of the robbery to the other defendants, participated in its planning, and negotiated with the other defendants a ten percent take of the proceeds of the robbery, but that he did not actively participate in the robbery because of an injured leg. This evidence was sufficient to establish a conspiracy, as it showed the formation of an agreement between Royce and the others to seek, by concerted action, the accomplishment of a criminal act. The crime of conspiracy is complete with the formation of the unlawful agreement. See *Commonwealth* v. *Cerveny*, 387 Mass. 280, 288 (1982); *Commonwealth* v. *Benjamin*, 3 Mass. App. Ct. 604, 618 & n.27 (1975); *Commonwealth* v. *Cook*, 10 Mass. App. Ct. 668, 670-671 (1980); *Commonwealth* v. *Corridori*, 11 Mass. App. Ct. 469, 476 (1981). The defendant's lack of participation in the final preparatory stages and the commission of the robbery did not require a directed verdict as, even had his absence signified his disassociation from the venture, "withdrawal from a conspiracy has not been shown to have any effect upon the commission of the common law offense of conspiracy to commit a crime under Massachusetts law." *Commonwealth* v. *Nighelli*, 13 Mass. App. Ct. 590, 596-597 (1982). See *Commonwealth* v. *Dellinger*, 10 Mass. App. Ct. 549, 556 (1980), *S.C.* 383 Mass. 780 (1981); Nolan, Criminal Law § 452, at 289 (1976).

2. *Rossetti's motion to suppress*. Rossetti challenges the denial of his motion to suppress evidence of instrumentalities of the robbery found in a locker, a key to which was found in a search of his apartment, asserting error both in the motion judge's subsidiary findings of fact and in his determination that Rossetti lacked legitimate expectation of privacy in the locker.[2]

---

[2] "The expectation-of-privacy inquiry as to whether a search has occurred is preliminary to a determination whether applicable probable cause and warrant requirements have been followed." *Commonwealth* v. *Podgurski*, 386 Mass. 385, 387 n.5 (1982), cert. denied, 459 U.S. 1222 (1983).

"The determination of the weight and credibility of the testimony [on a motion to suppress] is the function and responsibility of the judge who saw and heard the witnesses . . . [W]here subsidiary findings of fact have been made . . . they will be accepted by this court, and we do not substitute our judgment . . . absent clear error." *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980), and cases cited. See *Commonwealth* v. *King,* 389 Mass. 233, 234 n.1 (1983). There is no merit in Rossetti's contention that there was clear error in the motion judge's decision not to credit Rossetti's testimony and that of the superintendent of the building in which the locker was located. The judge totally rejected Rossetti's testimony based on his "demeanor on the stand" and the "wildly inconsistent nature" of his testimony,[3] and that of the superintendent, assessing him as a "nervous and insincere" witness. Instead, the judge accepted the testimony of the State police officer who searched the locker and the affidavit of the superintendent, made contemporaneously with the search, which corroborated the police officer's testimony and differed from the superintendent's testimony "in virtually all significant respects."

There was no error in the judge's determination that Rossetti had no legitimate expectation of privacy in the locker. "A person cannot claim to have been the victim of a search violative of the Fourth Amendment [and art. 14 of the Declaration of Rights of the Constitution of the Commonwealth] unless he had a legitimate expectation of privacy in the particular circumstances." *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 741-742 (1981). *United States* v. *Salvucci,* 448 U.S. 83, 92-93 (1980). *Rawlings* v. *Kentucky,* 448 U.S. 98, 104-106 (1980). *Commonwealth* v. *Ford,* 394 Mass. 421, 423-424 (1985), *S.C.* 17 Mass App. Ct. 505 (1984). "The burden is on the defendant to 'establish not only that he had a real, subjective expectation of privacy . . ., but that this expectation, viewed objectively, was reasonable.' " *United States* v. *Her-*

---

[3] The defendant testified that he had maintained exclusive dominion and control over the locker and had retained the only key to it, yet he was unable to explain how the incriminating items had gotten into the locker.

*shenow*, 680 F.2d 847, 855 (1st Cir. 1982), quoting from *United States* v. *Goshorn*, 628 F.2d 697, 700 (1st Cir. 1980). "[A] legitimate expectation of privacy means more than a subjective expectation of keeping incriminating evidence hidden." *United States* v. *Hershenow, supra.* The judge's findings that the locker was located in the defendant's grandparents' apartment building, and that it was opened by the police with a key found in the defendant's apartment, were not inconsistent with his conclusion that the defendant had no authority to use the locker or to exclude others from access to it. See *Rawlings* v. *Kentucky, supra* at 105.

3. *Prosecutorial misconduct in closing argument.* On the last day of trial, a Friday afternoon, the prosecutor in closing argument referred to the defendants as "career criminals." This characterization prompted an objection from Royce's defense counsel, who suggested that the judge "make an instruction to the jury on Monday morning" regarding the reference. On Monday morning the judge, conferring with counsel, stated:

> "I think counsel will agree that what they wanted me to do is to tell the jury to disregard that remark. It was inadvertent and there was no such evidence in this case. Does everybody agree with that?"

All counsel answered in the affirmative, and the judge accordingly instructed the jury:

> "Before we begin, after consulting with counsel, I want to say to you that there were some inadvertent misstatements, we are all agreed, misstatements made by the prosecutor in this case in his closing argument, which I have been asked by everybody to correct.
>
> "In the first place, we think there was reference in argument to the defendants, Mr. Royce, Mr. Sousa, and Mr. Rossetti of being criminals. There is no such evidence in this case, and that is an inadvertent statement."

On appeal, counsel for all defendants argue that this curative instruction was insufficient.

Defense counsels' affirmations of the judge's proposed action, suggested by counsel for Royce, and their failure to make an objection at the close of the curative instruction, indicate to us that the misstatement had been corrected to all counsels' satisfaction. *Commonwealth* v. *Grammo*, 8 Mass. App. Ct. 447, 457 (1979). We therefore limit our review to a determination whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). See *Commonwealth* v. *Gaeten*, 15 Mass. App. Ct. 524, 526 (1983). "In analyzing whether an improper remark is prejudicial or presents a risk of a miscarriage of justice, the remark must be considered in the context of the prosecutor's entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978).

The scope of closing argument is limited to a summation of the evidence and all fair inferences from the evidence. *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977). Moreover, the government is not entitled in closing argument to attack the character of a defendant if it has not been placed in issue at trial. *Id.* at 575. There is no doubt that the prosecutor's reference to the defendants as "career criminals" was beyond the evidence and prejudicial. However, we think that the prejudicial effect of this isolated remark was sufficiently cured by the judge's specific curative instruction that no evidence in the case supported the prosecutor's inadvertent statement, and by the judge's final instructions in which he told the jury that counsel "may misstate unintentionally the evidence," that arguments of counsel were not evidence and that it was the jurors' recollection of the evidence which controlled. See *Commonwealth* v. *Stone*, 366 Mass. 506, 511 (1974). The prosecutor's argument as a whole was fair, and he too stressed that the jurors could only consider the evidence put before them and must disregard contrary statements of counsel. There was strong direct and circumstantial evidence implicating the defendants in the conspiracy. We conclude that there is not a substantial risk of a miscarriage of justice.

4. *Rossetti's claim of collateral estoppel.* Prior to his trial for conspiracy to assault and to rob, Rossetti was acquitted by

a jury of the substantive offenses on which the conspiracy charge was based, of robbery while armed and masked, and assault with intent to rob while armed. *Commonwealth* v. *Benson,* 389 Mass. 473, 480, cert. denied, 464 U.S. 915 (1983), makes clear that acquittal of a substantive offense does not preclude subsequent prosecution of charges of conspiracy to commit that offense. Rossetti argues, however, that, by virtue of his acquittal on the substantive charges, the government was collaterally estopped in the subsequent conspiracy trial from presenting evidence of Rossetti's participation in the planning and preparation for the robbery, of the commission of the robbery, and of Rossetti's participation it it.

Under the doctrine of collateral estoppel, "embodied in the Fifth Amendment guarantee against double jeopardy," when "an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* v. *Swenson,* 397 U.S. 436, 443, 445 (1970). Collateral estoppel precludes the introduction of evidence determined in the defendant's favor at an earlier trial "if the jury could not have based their verdict rationally on an issue other than the one the defendant seeks to foreclose." *Commonwealth* v. *Benson, supra* at 478. A determination of the issues decided in the defendant's favor as a result of a previous acquittal requires an examination of the record of the prior proceeding, including the "pleadings, evidence, charge, and other relevant matter." *Ashe* v. *Swenson, supra* at 444.[4] See *Commonwealth* v. *Kline,* 19 Mass. App. Ct. 715, 717-719 (1985).

The critical evidence presented in Rossetti's prior trial on the substantive offenses linking him with the robbery consisted of the testimony of one Joseph Smith, who testified as to Rossetti's planning and preparation for and participation in the robbery, as well as evidence of the fruits and instrumentalities

---

[4] In this case, we have been provided with a transcript of the testimony at Rossetti's first trial. In addition, all of the exhibits in the first trial were admitted in evidence in the conspiracy trial. We do not have the judge's instructions to the jury.

of the crime recovered from Rossetti's apartment and from a locker to which Rossetti had a key. In that trial, the jury could have acquitted Rossetti by finding that he did not participate in the actual commission of the robbery but without necessarily rejecting evidence of his planning and preparation for the robbery, contrast *United States* v. *Kramer*, 289 F.2d 909 (2d Cir. 1961), his possession of the fruits and instrumentalities of the crime, or the occurrence of the robbery itself. Consequently, evidence of his role in the planning and preparation for the robbery, the incriminatory items found in his apartment and the locker, and the occurrence of the robbery were properly admissible in the subsequent conspiracy trial.

The Commonwealth concedes on appeal, and we agree after reviewing the record, that Rossetti's acquittal in the prior trial necessarily constituted a determination by the jury that he did not participate in the robbery. Thus, Rossetti's acquittal should have precluded the relitigation of that issue. Accordingly, all evidence of his active participation in the robbery was erroneously admitted.[5] We conclude, however, that the admission of that evidence was harmless, beyond a reasonable doubt. See *Chapman* v. *California*, 386 U.S. 18, 24 (1967); *Commonwealth* v. *Gilday*, 382 Mass. 166, 178 (1980).

"We appreciate that we should apply the principle of harmless error with restraint, particularly in the face of asserted constitutional error. The peril to the defendant's rights is obvious in any process wherein the appellate court speculates, long after the fact, as to the jury's reasoning if the case as presented before them had been different." *Commonwealth* v. *Gilday, supra,* quoting from *Commonwealth* v. *Gilday*, 367 Mass. 474, 498-499 (1975), "We should set aside the conviction

---

[5] There in no merit in Sousa's contention that the doctrine of collateral estoppel precluded relitigation of those issues as to his case which we have determined should not have been relitigated as to Rossetti's case. The doctrine of collateral estoppel in criminal cases only applies where there is mutuality of the parties. Sousa cannot claim collateral estoppel by reason of Rossetti's acquittal. *Commonwealth* v. *Cerveny*, 387 Mass. 280, 284 (1982). *Commonwealth* v. *Benson*, 389 Mass. 473, 478 n.6 (1983). See *Standefer* v. *United States*, 447 U.S. 10, 21-25 (1980).

unless we are 'sure that the error did not influence the jury, or had but very slight effect.' " *Commonwealth* v. *Gilday,* 382 Mass. at 178, quoting from *United States* v. *Agurs,* 427 U.S. 97, 112 (1976). Here, there was overwhelming evidence of Rossetti's complicity in the conspiracy. Rossetti met numerous times with the other defendants to plan and prepare for the robbery, including repeated visits to the scene of the contemplated crime. During one of those meetings, on the evening before the robbery, Rossetti showed the other defendants a blue duffel bag, ski masks, two sawed-off shotguns, several pairs of brown gloves, and a green mechanic's jump-suit. Ski masks and a shotgun were used in the robbery, during which the perpetrators took a .38 caliber pistol and its holster from a Brink's guard. The blue duffel bag, ski masks, sawed-off shotguns, brown gloves, green mechanic's jump-suit, and the .38 caliber pistol and its holster were found in Rossetti's apartment and in a locker to which he had a key. Moreover, a significant amount of the cash found hidden behind the face of a stereo speaker in Rossetti's apartment was linked to the money stolen in the robbery.

In light of this and other evidence, we think that the admission of the evidence of Rossetti's participation in the robbery could not have had other than a very slight effect on the verdict of the jury. Indeed, even had that evidence been excluded, the jury would have been warranted in inferring Rossetti's participation in the commission of the crime from the other admissible evidence. See *Commonwealth* v. *Benson,* 389 Mass. at 480.

5. *The allowance of the motion in limine.* Rossetti and Sousa argue that it was error to allow the Commonwealth's motion in limine barring the defendants from offering evidence of Rossetti's prior acquittal of the substantive offenses contemplated by the conspiracy. There was no error.

"The purpose of a motion in limine is to prevent irrelevant, inadmissible or prejudicial matters from being admitted in evidence . . . and in granting such a motion, a judge has discretion similar to that which he has when deciding whether to admit or exclude evidence" (citations omitted). *Commonwealth* v. *Lopez,* 383 Mass. 497, 500 n.2 (1981). *Commonwealth* v.

*Hood*, 389 Mass. 581, 594 (1983). *Commonwealth* v. *United Books, Inc.*, 389 Mass. 888, 898 (1983). Here, the elements of the crime of which Rossetti was acquitted differed significantly from the elements of the conspiracy. See *Commonwealth* v. *Benson*, 389 Mass. at 479-480. "Consequently, evidence of his acquittal was of questionable relevance and might have confused the jury." *Commonwealth* v. *Kline*, 19 Mass. App. Ct. at 719.

We are unpersuaded by the defendants' contention that, because the Commonwealth presented evidence previously offered in Rossetti's trial for the substantive offenses, evidence of his acquittal should have been admitted quid pro quo.[6] As we have concluded, evidence of the occurrence of the robbery, the incriminatory items found in Rossetti's apartment and the locker, and Rossetti's part in the planning and preparation of the robbery, were not necessarily determined in the previous trial. Therefore, evidence of his acquittal was unrelated to the reintroduction of this evidence in the conspiracy trial. While the evidence of Rossetti's acquittal might have mitigated the effect of the evidence as to his participation in the robbery, we have held that the erroneous admission of the latter evidence as to Rossetti was harmless beyond a reasonable doubt.

*Judgments affirmed.*

---

[6] As to Sousa's argument in this respect, see note 5, *supra*.