COMMONWEALTH *vs.* DARRELL WEAVER.

Suffolk.  September 18, 1985. — January 29, 1986.

Present: KASS, KAPLAN, & SMITH, JJ.

*Evidence,* Other offense, Prior conviction. *Error,* Harmless. *Practice, Criminal,* Instructions to jury.

At the trial of a defendant charged with unlawfully carrying a firearm, it was reversible error for the judge to admit, over objection, evidence that, during the confrontation that gave rise to the firearm charge and a murder charge against the defendant's brother, the defendant had had a knife in his possession and had threatened a friend of the murder victim with it, where references to this evidence had pervaded the trial and where the prosecution's case against the defendant, although strong, was not overwhelming. [527-529]

At the trial of an indictment for unlawfully carrying a firearm, the judge did not abuse his discretion in ruling that evidence of the defendant's prior convictions of assault with intent to murder being unarmed, unarmed robbery, and assault and battery, would be admissible to impeach his credibility. [529]

INDICTMENT found and returned in the Superior Court Department on October 19, 1983.

The case was tried before *Robert A. Mulligan,* J.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Robin A. Pearl,* Assistant District Attorney, for the Commonwealth.

SMITH, J. As a result of an incident that occurred in the late evening hours of August 3 and the early morning hours of August 4, 1983, the defendant and his brother, Tyrone Weaver, were both charged with unlawfully carrying a firearm. Tyrone Weaver was also charged with murder in the first degree. The two brothers were tried together before a jury and convicted. Tyrone Weaver's convictions were upheld by the Supreme Judicial Court in *Commonwealth* v. *Weaver,* 395 Mass. 307

(1985). The defendant's appeal is now before us. He argues that the judge erred in (1) refusing to exclude certain evidence from the trial; (2) denying his motion to sever his trial from that of his brother; (3) failing adequately to cure misstatements allegedly made by the prosecutor in his closing argument; and (4) refusing to instruct the jury as to the defense of necessity.

We recite facts that could have been found by the jury from the evidence introduced at the joint trial. Shortly before midnight on August 3, 1983, an argument between two groups broke out near the intersection of Blue Hill Avenue and Castlegate Road in the Roxbury section of Boston. One group consisted of the victim, Michael Owens, and a few friends. The other group was made up of the defendant, his brother Tyrone, and some of their friends. During the course of the argument, Tyrone Weaver hit the victim, who left the scene and went into a building nearby. After the victim left, another argument flared between the groups. During that argument the defendant was seen standing at the edge of the crowd, holding a knife to the stomach of one of the victim's friends.

Just before midnight, the police arrived in response to a telephone call. The crowd dispersed but gathered again once the police left. The victim came out of the building he had entered, and he and Tyrone Weaver resumed their argument. Tyrone departed the scene and ran off toward Blue Hill Avenue. He returned in about ten minutes. The defendant was standing on the sidewalk at that time holding a knife by his side. Tyrone Weaver pulled a gun from a jacket that he had draped over his arm and, holding the gun in his hand, hit the victim on the mouth with it. The victim staggered backwards into the doorway of a nearby building. As he attempted to escape, Tyrone Weaver shot him in the back.

Tyrone then handed the gun to the defendant, who put it into his pocket. The defendant then entered one of the buildings nearby and went upstairs to his girlfriend's apartment on the third floor. Later, the police saw someone whom an officer identified as the defendant drop a gun from the window of a third-floor apartment. The gun was retrieved. It turned out to be the gun used to kill the victim.

We now discuss the defendant's contentions.

1. *Evidence of prior misconduct*. The defendant contends that the judge erred in allowing the Commonwealth to introduce evidence of misconduct by him prior to the murder and before the alleged occurrence of the crime with which he was charged, the unlawful carrying of a firearm. He points to the admission of testimony that, at the time of the confrontation before the murder, he had a knife in his possession and threatened a friend of the victim with it.

It has been stated that "the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged." *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985). But, if "such evidence is relevant for some other purpose, it is not rendered inadmissible merely because it indicates the possible commission of another offense." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). Here, the judge found the evidence to be admissible for the purpose of showing the jury the "entire context" of the events that occurred during the night of August 3 and early morning hours of August 4.[1] See *Commonwealth* v. *Durkin*, 257 Mass. 426, 428 (1926).

It is difficult to see how the evidence of the defendant's possession and use of a knife would be of assistance to the jury in regard to the case against the defendant. See *Commonwealth* v. *Durkin, supra*. The sole charge against the defendant

---

[1] The defendant was being tried with Tyrone Weaver, who was charged with first-degree murder. The judge undoubtedly believed that the evidence would be helpful to the jury's understanding of the events leading up to the murder.

The defendant filed a severance motion, which was denied by the judge. The defendant contends that the judge's action was error. Because we reverse on other grounds, we do not discuss that issue. However, we note that separate trials here would not have hampered judicial economy. The evidence material to the defendant's charge was adduced through the testimony of four witnesses. In short, "[i]t would not have been impractical to have conducted separate trials." *United States* v. *Salomon*, 609 F.2d 1172, 1177 (5th Cir. 1980).

was unlawfully carrying a firearm.[2] That charge was based on his alleged conduct *after* the murder when, according to one witness, Tyrone Weaver handed him the murder weapon and he carried it from the scene of the murder. Thus, there was a clear line of demarcation between the defendant's alleged incriminating conduct and that of Tyrone Weaver. Here, the crime with which the defendant was charged would not be rendered "unintelligible if the references to the [defendant's possession and use of a knife were] omitted." *Commonwealth v. Yelle,* 19 Mass. App. Ct. 465, 471 (1985), quoting from *Commonwealth v. Brown,* 389 Mass. 382, 385 (1983). Therefore, the evidence was inadmissible against the defendant.

The Commonwealth contends that the admission of the evidence was harmless error because (1) the case against the defendant was overwhelming and (2) the judge's limiting instructions to the jury removed any prejudice to the defendant.[3] We disagree.

Here the evidence against the defendant was strong, but it was not overwhelming. Although there were several eyewitnesses to the murder, only one stated that she saw Tyrone Weaver give the firearm to the defendant after the murder. A police officer identified the defendant as the person he saw dropping the murder weapon from the third-floor window. His identification was vigorously challenged on cross-examination.

---

[2] It should be kept in mind that the defendant was not charged as a joint venturer with his brother in the murder, or as an accessory before the fact (G. L. c. 274, § 2) or an accessory after the fact (G. L. c. 274, § 4) to the murder.

[3] On five different occasions the judge instructed the jury as to the limitations that they had to observe regarding the use of the evidence as to the defendant's possession and use of a knife. The judge told the jury that the only crime that the defendant was charged with was unlawfully carrying a firearm and that the jury should not infer guilt on that charge from the fact that witnesses had testified that the defendant had held a knife in his hand. He also told the jury that the evidence was admitted for the limited purpose of allowing the jury to learn of the entire context of the events that had transpired on the night in question. The judge did not specifically charge the jury that use of this evidence was limited solely to the charges against Tyrone Weaver.

As to the judge's limiting instructions, any possible mitigating effect that they might have had on the inadmissible evidence was removed by its frequent appearance in the trial and by the inflammatory nature of that evidence. The evidence was referred to throughout the trial. The prosecutor mentioned it in his opening statement,[4] four witnesses were allowed to testify to it, and the prosecutor skillfully used it again in his closing argument.[5]

"[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton* v. *United States,* 391 U.S. 123, 135 (1968). Such a context is presented in the instant case. The evidence was devastating to the defendant. It linked him closely to events that led to a brutal murder, a crime with which he was not charged. To ask the jury to ignore such evidence when considering the guilt of the defendant is to ask them to perform "a mental gymnastic which is beyond, not only their powers, but anybody's else." Judge Learned Hand in *Nash* v. *United States,* 54 F.2d 1006, 1007 (2d Cir. 1932).

It has been stated in regard to harmless error that "[w]e should set aside the conviction unless we are 'sure that the error did not influence the jury, or had but very slight effect.' " *Commonwealth* v. *Gilday,* 382 Mass. 166, 178 (1980), quoting

---

[4] In his opening statement the prosecutor made the following comment: "[Wendell Burton] lives at No. 6 Castlegate, the first entryway, and he's a long-time friend of Michael Owens. He did not join in the affray because Darrell Weaver was holding a knife to his throat, preventing him from getting into it." Later he also stated, "You will hear evidence that as [the defendant] stood there, he had a knife in his right hand down against his leg."

[5] In his closing argument to the jury, the prosecutor said: "Darrell operates at the fringes a little more subtly. . . . But what he does do is to keep himself close by at the fringe of the activity and with the knife which he has concealed in his sleeve and down by his side. At various times he uses that knife. In one instance to keep Wendell Burton out of the affray; and another instance when they were all gathered in a semicircle in front of the entranceway at No. 10. He uses it down at his side at the ready so that if something should happen which requires his intervention, he's prepared to intervene."

from *United States* v. *Agurs,* 427 U.S. 97, 112 (1976). Also see *Commonwealth* v. *Royce,* 20 Mass. App. Ct. 221, 228-229 (1985). Despite the judge's sincere efforts to limit the effect of the evidence, we cannot say that the error in admitting such evidence " ' " did not influence the jury, or had but very slight effect" ' " upon them. *Id.* at 229.

2. *Other issues.* We doubt that the other issues raised by the defendant will arise at a new trial.

It is not readily apparent to us that the victim's sister will testify at the new trial, as her testimony did not implicate the defendant in regard to the gun carrying charge. If she does testify, the judge should hold a brief hearing to determine whether there is need for testimony concerning her photographic identification. The court's decision in *Commonwealth* v. *Weaver,* 395 Mass. at 309-310, does not control the situation here because the defendant, unlike Tyrone Weaver (whom the witness had never seen before the night in question), was well known to the witness.

The judge did not abuse his discretion in ruling that he would allow the prosecutor to put in evidence the defendant's prior convictions if the defendant took the stand. *Commonwealth* v. *Maguire,* 392 Mass. 466, 467 (1984). The defendant's past convictions (assault with intent to murder being unarmed, unarmed robbery, assault and battery) are sufficiently dissimilar from the defendant's present charge, a possessory offense. See *Commonwealth* v. *Maguire, supra* at 471. There was no error.

Finally, we are sure that the prosecutor will not repeat the remark about the role of defense counsel which he made in his closing argument.

*Judgment reversed.*

*Verdict set aside.*