## COMMONWEALTH *vs.* DARRELL WEAVER.

Suffolk. December 3, 1986. — August 11, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Necessity. Practice, Criminal,* Instructions to jury, Argument by prosecutor, Severance, Admissions and confessions. *Evidence,* Prior conviction, Other offense, Judicial discretion, Photograph, Relevancy and materiality. *Identification. Error,* Harmless.

A criminal defendant was not entitled to an instruction on the defense of necessity at his trial on an indictment charging him with unlawfully carrying a firearm, where the evidence presented at trial was insufficient to raise that issue. [614-615]

An improper statement as to the role of defense counsel, during the prosecutor's closing argument at a criminal trial, when considered in light of his entire argument and the curative instructions given by the judge, did not require reversal of the defendant's conviction. [615-616]

At the joint trial of a defendant charged with unlawfully carrying a firearm, and of his brother charged with the same crime and with first-degree murder, the judge did not abuse his discretion in denying the defendant's motions to sever his trial from that of his brother, where the defendant's and his brother's defenses were not irreconcilable, where much of the testimony concerning the murder was admissible against the defendant because the Commonwealth was entitled to show the circumstances attending the defendant's activity giving rise to the gun carrying charge, and where the judge carefully limited the jury's consideration of evidence admitted solely against the brother. [616-618]

At the trial of an indictment for unlawfully carrying a firearm, the judge did not abuse his discretion in ruling that evidence of the defendant's prior convictions of unarmed assault with intent to murder, unarmed robbery, and assault and battery, would be admissible to impeach his credibility. [618-619]

At the trial of a defendant charged with unlawfully carrying a firearm, the judge did not err in admitting evidence that, shortly before the confrontation that gave rise to the firearm charge and a murder charge against the defendant's brother, the defendant had possessed and brandished a knife, where there was evidence that the defendant had been an active participant in an on-going, although interrupted, altercation, and that he had been "on his brother's side," which, in turn, logically bore on

whether the defendant intentionally carried the murder weapon from the scene in his own interests or those of his brother. [619-620]

At the trial of a criminal case, admission of testimony of the victim's sister that she had identified the defendant's photograph after examining a collection of photographs maintained by the police, although error, did not prejudice the defendant, where the photographs themselves were not introduced, the testimony concerning the photographic identification was brief, the identification was not emphasized during the seven-day trial, and the case against the defendant was strong. [620-621]

INDICTMENT found and returned in the Superior Court Department on October 19, 1983.

The case was tried before *Robert A. Mulligan,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Robin A. Pearl,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. A jury convicted the defendant of unlawfully carrying a firearm. The same jury convicted the defendant's brother, Tyrone Weaver, of unlawfully carrying a firearm and of murder in the first degree. We affirmed Tyrone's convictions. *Commonwealth* v. *Weaver,* 395 Mass. 307 (1985). The defendant appealed his conviction, and the Appeals Court reversed on the ground that the trial judge had erroneously admitted evidence that, at the time of the confrontation between Tyrone and the murder victim, the defendant had possessed a knife and had threatened the victim's friend with it. *Commonwealth* v. *Weaver,* 21 Mass. App. Ct. 524 (1986). We granted the Commonwealth's application for further appellate review, and we now affirm the conviction.

The jury could have found the following facts. Shortly before midnight on August 3, 1983, an argument developed between two groups in the Roxbury section of Boston. The defendant and his brother, Tyrone, and their friends were in one group. The victim and his friends were in the other. Tyrone hit the victim. The victim left the scene and then another argument

occurred. During that argument, the defendant held a knife to the stomach of one of the victim's friends.

The crowd dispersed in response to the arrival of the police, but when the police left, the crowd gathered again. The victim returned to the scene and he and Tyrone resumed their argument. Tyrone went away and returned ten minutes later. The defendant was standing on the sidewalk at that time holding a knife by his side. Tyrone pulled a gun from his jacket and hit the victim with it. The victim staggered backwards. As he attempted to escape, Tyrone shot him in the back, killing him.

Tyrone then handed the gun to the defendant, who put it into his pocket. The defendant then entered a nearby building and went to his girlfriend's apartment on the third floor. Later, a police officer saw the defendant drop a gun from the window of a third-floor apartment. It was the gun that had been used to kill the victim.

The defendant argues that the judge erred in: (1) refusing to instruct the jury on the defense of necessity; (2) failing adequately to cure misstatements made by the prosecutor in his closing argument; (3) denying the defendant's motions to sever his trial from that of his brother; and (4) refusing to exclude certain evidence from the trial.

We conclude that there was no reversible error, and affirm the conviction.

1. *Necessity Defense.*

The defendant was entitled to an instruction on the defense of necessity only if the evidence presented at trial was sufficient to raise that issue. "A judge need not charge the jury on a hypothesis not supported by evidence." *Commonwealth* v. *Hood,* 389 Mass. 581, 593-594 (1983), quoting *Commonwealth* v. *Thurber,* 383 Mass. 328, 331 (1981).

The defendant argues that, with proper jury instructions, the jury could have found that his removal of the gun from the volatile scene of the crime was a lesser evil than either dropping it in the midst of the crowd or refusing to accept the gun when proffered by his brother, "who, after all, had immediately before shot a defenseless man in the back." But even if we agree with the defendant on this point, it is not enough that

the jury could have found that his actions resulted in less harm
and danger than would have been occasioned by his complianᵉe
with the criminal law. In order to raise the issue of necessity
as a defense, there must also be evidence that the defendant
was motivated by a desire to avoid the greater evil. "Actual
necessity, without the intention, is not enough. If A kills his
enemy B for revenge, and he later learns to his happy surprise
that by killing B he saved the lives of C and D, A has no
defense to murder." W.R. LaFave & A.W. Scott, Jr., Substan-
tive Criminal Law § 5.4 (d) (3), at 634 (1986 ed.). See also
Model Penal Code § 3.02 comments at 11-12 (1985). There
was no such evidence here.

The defendant did not testify. While there undoubtedly are
situations in which the justifying intention is fairly inferable
solely from the circumstances surrounding a defendant's con-
duct — as when an ambulance driver racing to a hospital
exceeds a speed limit, or when a defendant seizes a firearm
from one who had expressed an immediate intention to use it,
and flees to a place of safe-keeping — a jury asked to discern
this defendant's reasons for violating the law would be forced
to engage in pure speculation with respect to whether the de-
fendant's intention was to prevent the greater evil or was to
protect his brother or save himself from being implicated in
the victim's death. The judge did not err in refusing to instruct
the jury on the defense of necessity.

2. *Prosecutorial Misconduct.*

During his closing argument, the prosecutor stated that: "You
are engaged as jurors in a search for truth. The lawyers' role
in the case are different. We are advocates, and with respect
to defense counsel in any case where there's a defendant before
the bar, their role, their special function is not to seek the
truth, as you must do. It is to create doubts in your minds.
You may have seen that and reached that conclusion yourselves
as you watched this case tried. My job is to present all of the
evidence that I can which supports the charge against the de-
fendant in the case, but it is for you to decide whether or not
the Commonwealth has sustained that burden." Of course, the
role of defense counsel, like that of the prosecutor, is to assist

the jury to discover the truth. The prosecutor's assertion to the contrary was highly improper, and defense counsel seasonably objected. The judge instructed the jury as follows: "In final argument counsel for the Commonwealth suggested or stated — I don't remember the exact words — that his function was a certain function and the function of defense counsel was to pick out some doubts in a case. Well, that's incorrect. I told you the final arguments are not evidence. Final arguments are to assist you in understanding the evidence. Defense counsel represents his client and he has many duties, and I'm not going to go over the duties defense counsel has, but one of the duties, of course, is to cross examine witnesses, and it is through cross examination of witnesses that you the jury get the complete picture of all the evidence. So when defense counsel cross examines witnesses, obviously he's engaged in the presentation of all the evidence, the entire evidence, to you the jury." Defense counsel did not thereafter indicate to the judge any dissatisfaction with that instruction.

"In analyzing whether an improper statement has a prejudicial effect, we consider the prosecutor's entire argument, as well as the judge's instructions to the jury and the evidence presented at trial." *Commonwealth* v. *Fernette,* 398 Mass. 658, 666 (1986). See also *Commonwealth* v. *Haas,* 398 Mass. 806, 813 (1986). The judge's curative instructions removed any reasonable possibility of prejudice resulting from the prosecutor's improper remarks.

3. *Motions to Sever.*

The defendant contends that the judge erred in denying his motions to sever his trial from that of his brother. He argues that severance was required in view of the adverse tactics of counsel for his brother, and because he was prejudiced by the inflammatory evidence relating to his brother's indictment for murder in the first degree. There was no error.

The defendant offers the following examples of the adverse tactics of his brother's trial counsel: counsel opposed the defendant's effort to exclude testimony that the defendant wielded a knife shortly before the victim was killed; counsel elicited a police officer's testimony that the defendant, rather than his

brother, was arrested and charged with murder on the night of the shooting; and counsel impeached a witness whose testimony was exculpatory of the defendant. "In this Commonwealth severance is usually a matter within the sound discretion of the trial judge. *Commonwealth* v. *Cepulonis,* 374 Mass. 487, 499 (1978). *Commonwealth* v. *Hogg,* 365 Mass. 290, 296 (1974). Joinder expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice time and energy to serve upon juries, and avoids the necessity of recalling witnesses to successive trials. *Johnson* v. *United States,* [398 A.2d 354, 367 (D.C. 1979)]. Such considerations, however, must yield at some point to the rights of the accused. That point is reached when the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial. In such circumstances, and upon the making of a timely motion, failure to sever constitutes an abuse of discretion." *Commonwealth* v. *Moran,* 387 Mass. 644, 658 (1982). In *Moran* we ruled that the prejudice resulting from a joint trial was so compelling that it prevented the defendant from receiving a fair trial. But the facts of *Moran* were materially different from the facts of this case. The key fact requiring severance in *Moran* was that "[t]he only realistic escape for either defendant was to blame the other." *Id.* at 659. The defenses of the two defendants in *Moran* were "mutually antagonistic and irreconcilable." *Id.* That situation did not obtain in this case. Clearly, the only realistic possibility of Tyrone's acquittal did not require that he accuse the defendant of unlawfully carrying the murder weapon. The defendant's and Tyrone's defenses were not irreconcilable. Rather, at most, the defendant and Tyrone merely pursued inconsistent trial strategies as in *Commonwealth* v. *Horton,* 376 Mass. 380, 390 (1978), cert. denied sub nom. *Wideman* v. *Massachusetts,* 440 U.S. 923 (1979), and that is not enough to require severance. *Id.*

The defendant also directs our attention to Federal cases which have held that failure to sever may amount to an abuse of discretion when the movant would be severely prejudiced

by evidence relevant only to charges against his codefendant. See, e.g., *United States* v. *Donaway,* 447 F.2d 940, 943 (9th Cir. 1971); *United States* v. *Sampol,* 636 F.2d 621, 642-651 (D.C. Cir. 1980). But here, unlike in those cases, much of the testimony concerning the murder was admissible against the defendant because the Commonwealth was entitled to show the circumstances surrounding the defendant's activity giving rise to the gun carrying charge. We discuss this further in part 4 of this opinion. Furthermore, the judge carefully limited the jury's consideration of evidence admitted solely against Tyrone. It is highly unlikely that the jury was confused about the charges, the codefendants, or the evidence applicable to each of them. Thus, we conclude that joinder did not unfairly prejudice the defendant.

4. *Evidentiary Issues.*

a. *Prior convictions.* The trial judge denied the defendant's motion to exclude evidence of his prior convictions for assault with intent to murder being unarmed, unarmed robbery (reduced from armed robbery), and simple assault and battery (reduced from assault and battery by means of a dangerous weapon). These prior convictions were never placed in evidence because the defendant declined to testify.

With limitations not applicable here, G. L. c. 233, § 21, provides that a witness's prior convictions may be introduced in evidence to affect his credibility. In *Commonwealth* v. *Maguire,* 392 Mass. 466, 470 (1984), we held that a trial judge's discretionary ruling admitting evidence of a defendant's prior convictions is subject to appellate scrutiny. "The question on appeal will normally be whether there was an abuse of discretion in admitting evidence of a prior conviction because the danger of unfair prejudice outweighed the probative value of the evidence of a prior conviction for the purposes of impeachment." *Id.* In balancing the risk of prejudice against the probative value of the evidence, a crucial consideration is whether the prior convictions were for crimes substantially similar to the offense for which the defendant is being tried. *Id.* We agree with the Appeals Court, see 21 Mass. App. Ct. at 529, that "[t]he defendant's past convictions . . . are suffi-

ciently dissimilar from the defendant's present charge, a pos-
sessory offense," that the judge's refusal to exclude evidence
of them was within the judge's discretion.

b. *Evidence of prior misconduct.* The defendant contends
that the trial judge erred in permitting over his objection the
introduction of evidence that he possessed and brandished a
knife shortly before his alleged carrying of a firearm occurred.
Four witnesses testified to that prior misconduct during the
course of the trial, and the prosecutor referred to that evidence
in his opening and closing statements. Each time a witness
mentioned the defendant's wielding the knife, the judge gave
the jury careful instructions as to the limited use they were to
make of that evidence. For example, after the first time a
witness testified to the defendant's possession of a knife, the
judge instructed the jury that "you realize that the only charge
against Darrell Weaver at this time is unlawfully carrying a
firearm. That is what he is charged with, unlawfully carrying
a firearm and that is the only charge against him. . . . The
limited purpose for this particular evidence at this point is to
allow you the context, to allow you the context of what was
transpiring that night. You should not infer any guilt against
Mr. Darrell Weaver as to [his] carrying a firearm by virtue of
the fact that this witness said that at one point in time he held
a knife in his hand." The judge repeated that limiting instruction
in his final jury instructions. There was no error.

"[W]hile evidence of other criminal or wrongful behavior
may not be admitted to prove the character or propensity of
the accused as enhancing the probability that he committed
the offence for which he is standing trial, it is admissible for
other relevant probative purposes." *Commonwealth* v.
*Chalifoux,* 362 Mass. 811, 816 (1973). Even if otherwise ad-
missible, however, "there is ground for excluding such evi-
dence if the prejudice likely to be generated by it outweighs
its probative value — a matter on which the opinion of the
trial judge will be accepted on review except for palpable
error." *Commonwealth* v. *Young,* 382 Mass. 448, 462-463
(1981).

The value of the challenged evidence was not simply to show the probability that the defendant carried a gun without justification or excuse based on his propensity toward that kind of conduct. The evidence showed that the defendant had been an active participant in an on-going, although interrupted, altercation, and that the defendant had been "on his brother's side." Those facts, in turn, logically bore on whether the defendant intentionally carried the murder weapon from the scene in his own interests or those of his brother. Without the challenged evidence, the defendant's alleged unlawful carrying may have seemed an inexplicable and incongruous involvement in a dispute in which the defendant had no stake. See *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1982).

c. *Photographic identification.* The murder victim's sister testified that, on the night of the murder, while at City Hospital in the presence of two police officers, she selected photographs of the defendant and his brother from a group of approximately fourteen photographs. One of the police officers corroborated that testimony. The defendant argues that identification was not a live issue at trial, and that therefore the photographic identification evidence had little, if any, probative value, but that it tended to show that the defendant had had prior trouble with the criminal law, and was therefore highly prejudicial to him. We agree that the evidence should not have been admitted, see *Commonwealth* v. *Barrett,* 386 Mass. 649, 651-654 (1982), but the defendant has not met his burden on appeal to persuade us that "the error possibly weakened his case in some significant way so as to require a new trial." *Commonwealth* v. *Schulze,* 389 Mass. 735, 741 (1983). The photographs themselves were not introduced, and the testimony concerning the photographic identification was very brief. It was not emphasized during the seven-day trial and was not mentioned by the prosecutor in his opening or closing statements to the jury. Also, the case against the defendant was strong. See *Commonwealth* v. *Tobin,* 392 Mass. 604, 614-616 (1984) (brevity of incorrectly admitted evidence among factors supporting conclusion of lack of prejudice). In our view, the error was not reversible. It "could not

have had a significant prejudicial effect." *Commonwealth* v. *King,* 387 Mass. 464, 476 (1982).

*Judgment affirmed.*