COMMONWEALTH *vs.* EDWARD P. MASSOD.

Plymouth.    May 2, 1966. — June 3, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Betting. Evidence,* Relevancy and materiality, Of apparatus for registering bets, Telephone conversation, Admissions and confessions. *Practice, Criminal,* Nolle prosequi, Requests, rulings and instructions. *District Attorney.*

At the trial of a complaint under G. L. c. 271, § 17, for being present in a room with apparatus for registering bets on horse races, conversations concerning the placing of bets between police in that room and unknown persons who called in on a telephone there were relevant and admissible. [748]

Commonwealth *v.* Massod.

Where it appeared that, while police were in a room with one subsequently charged under G. L. c. 271, § 17, with being present in the room with apparatus for registering bets on horse races, he said in response to incoming calls on a telephone in the room that the police were there and that he could not "talk" and would see the callers later, such statements might be found to be an admission by him.  [748]

Where, during the trial of a complaint charging the defendant with two distinct offences, the prosecutor without the consent of the defendant entered a nolle prosequi as to one of such charges, there was in legal effect an acquittal on that charge, but on evidence supporting the other charge the judge properly denied a motion by the defendant "for acquittal" pertaining to the entire complaint and properly submitted the case to the jury on the remaining charge.  [748–750]

Evidence at the trial of complaints warranted findings of guilty on a charge under G. L. c. 271, § 17, of being present in a room with apparatus for registering bets on horse races and a charge under § 17A of using a telephone for the purpose of accepting such bets.  [750]

On a bill of exceptions not setting forth the charge to the jury in a criminal case, no error appeared in refusal of a request by the defendant for a ruling which the judge stated he refused as "covered in" the charge. [750]

Two COMPLAINTS received and sworn to in the District Court of Brockton on March 6, 1963.

On appeal to the Superior Court the cases were tried before *Boyle, J.,* a District Court judge sitting under statutory authority.

*Anthony M. Fredella* for the defendant.

*John Clark Wheatley,* Special Assistant District Attorney, for the Commonwealth.

SPALDING, J.  These are two criminal complaints brought in a District Court.  The first charged the defendant with being a person found or present in a room "with apparatus . . . for registering bets" upon horse races, and that "[he] did register such bets" (G. L. c. 271, § 17); the second charged the defendant with use of a "telephone for the purpose of accepting wagers or bets" on horse races. Upon appeal the defendant was found guilty on both complaints.  The defendant's exceptions relate to the admission of evidence, to the denial of motions for directed verdicts, to the denial of a motion for acquittal on the first complaint, and to the judge's refusal to give certain of the defendant's requests for instructions.

We summarize the pertinent evidence as follows: On
March 5, 1963, the Brockton police, pursuant to a search
warrant, entered the second floor of No. 26 Centre Street,
Brockton, and found the defendant and eight other persons.
There was a front room in which was located a radiator
(under which was found an Armstrong racing form[1]) and
a back room, in which was found a pay telephone with a
twenty foot cord. In front of the telephone were two damp
slates, chalk and damp cloths. Other slates, cards and
money were also found. A police officer, who qualified as
an expert on the registering of bets on horses, testified that
the Armstrong form, slates, chalk, damp cloths, and tele-
phone could be used in the making of bets, and that the long
telephone cord permitted a person to receive calls in the
front room instead of the rear room.

The officers remained on the premises about an hour and
a half, and during that time the telephone rang eleven times.
The police talked with each caller, and several of the con-
versations were introduced in evidence. The defendant
was present during each call.

The substance of these calls was as follows: One caller
asked for "Brockton Eddie." When asked what he
wanted, he said, "5-5-0 on Now Do It in the 7th at Lin-
coln." One caller asked for "Brockton Eddie" and then
hung up. Another call was transferred to the defendant
who said, "I can't talk to you now. The cops are here.
I'll see you later." Later a call was transferred to the de-
fendant who said, "[T]he police are here, I can't talk, I'll
see you later." A police officer, when asked by one caller
if he was "Brockton Eddie," replied that he was. The
caller said, "You are like hell," and hung up. Still an-
other when told by a police officer that he was "Brockton
Eddie" replied, "No it isn't — stop horsing around and
put Eddie on. I got some bets to put in."

In response to questions the defendant told the police
officers that he was in sole charge of the premises that day,

---

[1] There was evidence that the Armstrong form "contained information of
all horse races, jockeys, betting odds at all tracks in the United States that
day."

that he paid the telephone bills, and that he was "president of the Club."

1. The telephone conversations summarized above were clearly admissible. The first complaint charged the defendant with two offences; (1) registering bets, and (2) being present in a room with apparatus for registering bets. In proving the latter charge the Commonwealth could show that the room where the defendant was "found" contained "apparatus" which was used, or intended to be used, for the registering of bets upon horse races. *Commonwealth* v. *Jensky,* 318 Mass. 350. As we said in that case with respect to the admissibility of similar evidence, "It was highly cogent first hand information as to the actual use of the telephone equipment." P. 352. Moreover, the statements by the defendant asking the caller to see him later because of the presence of the police had the flavor of an admission and were admissible apart from the principle discussed in the *Jensky* case.

2. At the close of the Commonwealth's case the district attorney informed the court that he was going to enter a nolle prosequi with respect to so much of the first complaint as charged the defendant with registering bets, and thereupon did so. This was done without the defendant's consent. As a result of the nolle prosequi the complaint charged the defendant only with being found in a room with apparatus for registering bets. The defendant then presented a "motion for acquittal" with respect to the entire first complaint by reason of the fact that the nolle prosequi had been entered without his consent. This motion was denied subject to the defendant's exception. There was no error.

It is within the power of a district attorney to enter a nolle prosequi either as to an entire indictment or complaint or any count thereof, or any distinct and substantive part of it, so long as there remains a charge of an offence originally set forth. *Commonwealth* v. *Tuck,* 20 Pick. 356, 366. *Commonwealth* v. *Dunster,* 145 Mass. 101, 102. *Commonwealth* v. *Wakelin,* 230 Mass. 567, 572. Concerning the

time when a nolle prosequi may be entered the court per Rugg, C.J., said in *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 18–19, "Power to enter a *nolle prosequi* is absolute in the prosecuting officer from the return of the indictment up to the beginning of trial, except possibly in instances of scandalous abuse of the authority. . . . That power is limited, however, after a jury is empanelled. Then the defendant acquires a right to have that tribunal pass upon his guilt by verdict and thus secure a bar to another prosecution for the same offence. . . . A *nolle prosequi* cannot be entered after the jury has been empanelled without the express or implied consent of the defendant. . . . A *nolle prosequi* without the consent of the defendant after the trial has commenced and before verdict has the effect of acquittal. *Commonwealth* v. *Hart,* 149 Mass. 7." In the *Hart* case it was said (p. 8), "The true rule would seem to be, that, after a trial has commenced, the Commonwealth's attorney, though he has the power, has not the right, to terminate the prosecution without a verdict; and his refusal of record to further prosecute the indictment has the effect of and amounts to an acquittal of the defendant, unless it is done with his consent."

. In the light of these principles the judge did not err in denying the defendant's motion for an acquittal on the first complaint. The nolle prosequi which was entered eliminated from the complaint a distinct and severable portion of it and left it with a charge of an offence originally set forth. It was not an amendment of the complaint.[2] This, as the authorities cited above make clear, the prosecutor could do. But where, as here, this was done without the defendant's consent after the jury had been empanelled and before verdict, the nolle prosequi had the effect of an acquittal. When the nolle prosequi was entered the judge could have directed a verdict of not guilty as to so much of the complaint as charged the defendant with registering bets.

---

[2] "The offence charged cannot be changed by an attempted *nolle prosequi.*" *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 18. See, however, G. L. c. 277, § 35A, which permits a complaint or indictment to be amended as to matters of form but not as to matters of substance. *Commonwealth* v. *Snow,* 269 Mass. 598, 604–610. Compare *Commonwealth* v. *DiStasio,* 294 Mass. 273, 277–279.

Commonwealth *v.* Massod.

See *Commonwealth* v. *Vanetzian, ante,* 491, 493–494. But he could not properly have directed a verdict with respect to the remaining portion charging the defendant with being found in a room "with apparatus . . . for registering bets." The defendant's motion, which was directed to the entire complaint, asked for more than he was entitled to. The denial of this motion did not prejudice the defendant in any way. The case was submitted to the jury on that portion of the complaint still remaining, and as to that portion which was the subject of the nolle prosequi there was, in legal effect, an acquittal. This sufficiently protected the defendant, for in the event that he was subjected to another prosecution for that offence he could plead the former implied acquittal as a bar. See *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 18–19.

3. The defendant's motions for directed verdicts on both complaints were rightly denied. The evidence set forth·in the earlier part of this opinion clearly warranted a finding that the defendant was found in a room with "apparatus . . . for registering bets" in violation of G. L. c. 271, § 17, and used a telephone "for the purpose of accepting wagers or bets" in violation of c. 271, § 17A.

4. The judge did not err in refusing to grant the defendant's fourth and fifth requests.[3] The charge is not before us and requests of this sort considered without reference to the charge as a whole are virtually meaningless. Moreover, the fourth request would have had no application to the first complaint where, as the judge observed, the proof was entirely by direct evidence. The judge refused the fifth request because he had "covered [it] in [the] charge by stating the law permitting the drawing of reasonable inferences from the direct testimony." There is nothing in the bill of exceptions which would show that this statement of the judge was incorrect.

*Exceptions overruled.*

---

[3] These requests are: "4. That whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and not themselves presumed. 5. Where the evidence is circumstantial, it must be such as to exclude every reasonable hypothesis other than that of guilt."