COMMONWEALTH *vs.* EUGENE P. WASHINGTON.

No. 94-P-1183.

Worcester. April 20, 1995. - August 28, 1995.

Present: DREBEN, GILLERMAN, & PORADA, JJ.

*Search and Seizure*, Probable cause. *Constitutional Law*, Search and seizure, Probable cause. *Probable Cause. Practice, Criminal*, Severance, Trial of defendants together. *Evidence*, Relevancy and materiality, Telephone conversation.

In a criminal case the judge correctly ruled that police had probable cause to arrest the defendant on the basis of an unnamed informant's tip, where police officers' independent corroboration of the details of the tip was sufficient to compensate for the absence of any information about the basis for the informant's knowledge. [196-197]

At the trial of indictments for trafficking in cocaine involving two incidents four months apart and in different locations, the defendant did not show any prejudice from the trial of the indictments together where the evidence as to one incident was powerful and as to the other incident the judge allowed the defendant's motion for required findings of guilty. [197-199]

At the trial of indictments for trafficking in cocaine, testimony of a police officer as to the conversations he had with persons seeking to purchase drugs who had called on the defendant's beeper, which had been lawfully seized by police the day before, was properly admitted in evidence, where the conversations had the indicia of reliability and demonstrated the actual use of the beeper for drug transactions. [199-201]

INDICTMENT found and returned in the Superior Court Department on November 12, 1992.

A pretrial motion to suppress evidence was heard by *James F. McHugh*, J., and the case was tried before *Daniel F. Toomey*, J.

*Thomas J. Freda* for the defendant.

*Sandra L. Hautanen*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. Charged with drug activities in Worcester and West Brookfield, the defendant was convicted of trafficking in cocaine based on the Worcester incident. In his appeal, the defendant claims error in the denial of three motions — his motion to suppress evidence (cash, a beeper, and drugs) seized in Worcester, his motion to sever the Worcester and West Brookfield indictments, and his motion in limine to exclude testimony by police officers concerning messages allegedly received on the beeper seized by police in Worcester. We affirm his conviction.

1. *Motion to suppress.* The police conducted a search pursuant to an informant's tip. While not challenging the reliability prong of the two-pronged standard of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969), the defendant urges that the motion judge incorrectly found that independent police corroboration compensated for the absence of any information about the basis for the informant's knowledge.

The judge's findings based on the evidence at the motion hearing refute that claim. The information received by Officer Noone of the Worcester police from the "reliable" informant was that "a large black male named 'Gene' and another male were about to leave a house at 16 Wachusett Street in Worcester." The two would have more than fifty "halfs" of cocaine and would proceed to a white Ford Tempo automobile parked nearby having a specified license plate number. The information derived from the informant was relayed to other officers on duty, and within seven to ten minutes a number of officers were on the scene. Two of them recognized the Ford Tempo as one in which the defendant, a large black male known to them as "Gene" Washington and who was under investigation by them for drug transactions, had been seen several days earlier. A few minutes after the officers' arrival, the defendant and a white male came out of 16 Wachusett Street, briefly looked up and down the street, and went back into the building. Moments later they emerged and headed for the Tempo. Noone approached the defendant with gun drawn, called him by name, and identi-

fied himself as a police officer. A "pat frisk" of the defendant yielded a wad of about $750 and a beeper. A search of the defendant's companion revealed ninety-seven bags of cocaine.

We agree with the judge that the independent police corroboration of the tip in this case was at least as extensive as that in *Commonwealth* v. *Farrow*, 403 Mass. 176, 178 (1988). Here, in a short time, as predicted by the informant, a large black man whom police knew to be "Gene" Washington, accompanied by another male, left 16 Wachusett Street and went to a car bearing the specified license plate. The officers knew that that automobile had been driven by Washington, a suspected drug dealer and the subject of a recent drug investigation. Cf. *Commonwealth* v. *Carrasco*, 405 Mass. 316, 322 (1989); *Commonwealth* v. *Gates*, 31 Mass. App. Ct. 328, 333 (1991); Smith, Criminal Practice & Procedure § 215 (2d ed. 1983 & Supp. 1995) (officer's knowledge of a subject's reputation is a form of corroboration). There was sufficient corroboration here, particularly of the timing and the location of the defendant's activities, to make up for the deficiency on the "basis of knowledge" prong of the *Aguilar-Spinelli* test. Since there was corroboration of far more than innocuous details, the judge was correct in determining that the police had probable cause to arrest the defendant.

2. *Motion to sever.* Before trial, the defendant moved to sever the West Brookfield indictments from the Worcester indictments, while the Commonwealth filed a motion for joinder. Under Mass.R.Crim.P. 9(a) (3), 378 Mass. 859 (1979), a judge "shall join [related] charges for trial unless he determines that joinder is not in the best interests of justice." The determination whether joinder is appropriate rests in the discretion of the trial judge. *Commonwealth* v. *Montanez*, 410 Mass. 290, 303 (1991). *Commonwealth* v. *Souza, ante* 103, 111 (1995). It is appropriate when "the offenses constitute a single line of conduct, grow out of essentially one transaction, and would be proved by substantially the same evidence." *Commonwealth* v. *Montanez, supra,* quoting from *Commonwealth* v. *Gallison*, 383 Mass. 659,

671 (1981). See Mass.R.Crim.P. 9(a) (1), 378 Mass. 859 (1979). Where these criteria are not satisfied, and where the defendant would be prejudiced by the cumulative evidence of different offenses, severance should be granted. *Commonwealth* v. *Montanez*, 410 Mass. at 303. See also *Commonwealth* v. *Hoppin*, 387 Mass. 25, 34 (1982).

The Commonwealth's theory of joinder was that the defendant was a major cocaine dealer who befriended drug addicts and prostitutes and supplied them with food and drugs in return for their carrying large quantities of drugs as "stooges," thus insulating himself from jail sentences in the event that something went wrong. There were similarities between the two offenses, the male who was with the defendant in Worcester testified he carried cocaine in return for food and drugs, and in its motion for joinder the Commonwealth indicated that the person carrying the drugs in West Brookfield would testify that she was the defendant's girlfriend. The incidents, however, occurred four months apart, the defendant was with different people when caught, and different witnesses were needed to prove the two incidents. We need not, however, decide whether the judge exceeded his discretion because, in any event, the defendant has not met his burden of demonstrating prejudice requiring severance. *Commonwealth* v. *Montanez*, 410 Mass. at 304.

The evidence against the defendant concerning the Worcester indictments was powerful. The defendant's male companion, Stephen Kelly, testified that the two had traveled to Rhode Island, purchased the cocaine, brought it back to Worcester, and packaged it in small baggies. They did some of this packaging at 16 Wachusett Street, and the defendant handed the baggies to Kelly. After packaging the cocaine, the pair left Wachusett Street and then were arrested by the police. When arrested, the defendant had a large sum of money on him and a beeper, both items characteristically found in connection with drug dealing. One of the police officers took custody of the beeper and, the next evening, answered two calls from women seeking "Gino" and requesting drugs. (See part 3, *infra.*)

The West Brookfield evidence was presented by different witnesses and was weak. The only evidence elicited was that the police had received a tip leading them to pull over the defendant's car. There was nothing to connect the defendant with the drugs; the only cocaine confiscated, crack cocaine, was found on the defendant's girlfriend. She never appeared at trial and, on the defendant's motion, the judge granted a required finding of not guilty on the West Brookfield indictments. He informed the jury that

> "the indictment which relates to the West Brookfield episode is no longer before you. You are not to speculate about or to wonder about why it is not before you. Suffice it to say that it is not before you, so your task will be to render your verdict with respect to the Worcester indictment which is still before you."

While it would have been preferable for the judge in his final instructions to charge the jury to disregard the evidence relating to the West Brookfield indictments, the defendant did not object to this omission. The strength of the Worcester evidence and the paucity of evidence as to the West Brookfield indictment lead us to conclude that the defendant was not prejudiced by the failure to sever.

3. *Motion to exclude beeper testimony.* The defendant's motion in limine sought to prevent a police officer from testifying as to the contents of phone calls he had had with persons who called on the defendant's beeper. The judge took the motion under advisement. At trial, over the defendant's objection, the officer's testimony was admitted. He testified that he took the beeper with him on the day following the defendant's arrest, that it beeped about 8 P.M., and a telephone number showed on the beeper. He used his car phone to call the number indicated. A female answered. After the officer asked her what she wanted, she asked, "Where's Gino?" and after being informed that Gino was out of town, she asked for "a quarter," that is, a quarter gram of cocaine. The beeper sounded again at approximately 8:30 P.M., and

when the officer called the number shown, another female answered and also asked for drugs.

The defendant argues that the conversations are hearsay and should not have been admitted. The conversations, however, are similar to those admitted in *Commonwealth v. Massod*, 350 Mass. 745, 747-748 (1966), and *Commonwealth v. Jensky*, 318 Mass. 350, 352-354 (1945). In each of these cases the defendant was charged with being a person found in a room "with apparatus for registering bets," and in each of these cases the telephone at the defendant's location was answered by police, and telephone conversations from unknown persons asking to place bets were received in evidence. The *Jensky* court, referring to these conversations, stated that the evidence "was highly cogent first hand information as to the actual use of the telephone equipment." *Commonwealth v. Jensky*, 318 Mass. at 352. *Commonwealth v. Massod*, 350 Mass. at 748. The court went on to note, 318 Mass. at 352, that the case was analogous to *Commonwealth v. Kimball*, 7 Gray 328, 330 (1856), a prosecution for keeping a house of ill fame, in which evidence of the conversations of the occupants was admitted to show the character of the house.

Such conversations are treated as nonhearsay "in spite of the fact that the implications of the declarations must be believed for the declarations to have probative value." Liacos, Massachusetts Evidence § 8.2.3 (6th ed. 1994). Chief Justice Liacos classifies these cases under the rubric of extrajudicial conversations that are admitted in evidence to prove the nature of a place or thing associated with the conversation.[1] He points out that there is "a patent absence of motive to falsify on the part of the declarant and there is a large volume of independent items of evidence that can be consistent with one another only if the hypothesis is true." *Ibid.* We note

---

[1]Compare *Commonwealth v. Navarro, ante* 161, 166-167 (1995). Cf. *Commonwealth v. Miller*, 17 Mass. App. Ct. 991, 992-993 (1984), where the court held that, even assuming it was error to admit the unobjected to conversation of an unidentified caller seeking cocaine, there was no substantial risk of a miscarriage of justice.

that the Federal courts allow the admission of such extrajudicial evidence, giving various reasons why the conversations are not to be treated as hearsay.[2] The conversations that the police officer in this case had with the two women fall squarely within the reasoning of the Massachusetts cases, have the same indicia of reliability, and show the "actual use [of the beeper]" for drug transactions. *Commonwealth* v. *Jensky, supra* at 352. There was no error in their admission.

*Judgment affirmed.*

---

[2]See, e.g., *Headley* v. *Tilghman*, 53 F.3d 472, 477 (2d Cir. 1995), where conversations were admitted as circumstantial evidence that the defendant used his beeper to receive requests for drugs. The court pointed out that the assumption of the unidentified speaker that he was talking to a drug dealer "has a fair claim to be treated as non-hearsay since the attendant risks are not as intensively implicated as when the idea is directly enunciated in a statement." Similarly, in *United States* v. *Long*, 905 F.2d 1572, 1579-1580 (D.C. Cir.), cert. denied, 498 U.S. 948 (1990), the court held such conversations outside the scope of the hearsay rule because they presented an unintentional message and presumptively were more reliable. A slightly different approach was taken by *United States* v. *Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990), which held the conversations outside the hearsay rule because as inquiries they did not, and were not intended to, assert anything. To the same effect is *United States* v. *Oguns*, 921 F.2d 442, 448-449 (2d Cir. 1990). *United States* v. *Giraldo*, 822 F.2d 205, 213 (2d Cir. 1987), held that tape-recorded statements were not hearsay "for they presumably were not offered to prove the truth of the matters asserted therein and were admissible to prove that the statements were in fact made, in order to show that it was more likely than not that the cocaine possessed by Giraldo was possessed for purposes of distribution." A general discussion of the Federal cases may be found in Mueller & Kirkpatrick, Federal Evidence 101-102 (2d ed. 1994), where the authors indicate that such evidence is routinely admitted in both gambling and drug cases. *Id.* at 105.