## COMMONWEALTH vs. ANDRE MENDES.[1]

No. 97-P-285.

Middlesex. March 9, 1998. - April 1, 1999.

Present: WARNER, C.J., SMITH, & PERRETTA, JJ.

*Controlled Substances. Conspiracy. Joint Enterprise. Collateral Estoppel. Practice, Criminal,* Collateral estoppel, Required finding, Motion to suppress. *Search and Seizure,* Probable cause, Arrest. *Constitutional Law,* Search and seizure, Probable cause. *Arrest. Probable Cause.*

A criminal defendant's acquittal on charges of conspiracy did not collaterally estop his prosecution and conviction on the substantive charges on a theory of joint venture, where proof of a prior agreement was not an essential element of a joint venture to commit the substantive offenses [585-586]; and, while the Commonwealth was prohibited from presenting evidence of a prior agreement at the trial of the substantive offenses, evidence of the defendant's other actions was properly admissible at that trial [586-588].

Evidence at the trial of indictments was sufficient to warrant an inference that the defendant's role in the alleged joint enterprise was as a lookout, and the judge correctly denied the defendant's motion for a required finding of not guilty. [588-589]

In a criminal case, the judge correctly denied the defendant's motion to suppress evidence seized from his person at his arrest, where the record demonstrated that the police had probable cause to arrest him and the items seized were evidence of the crime for which he was arrested. [589-590]

INDICTMENTS found and returned in the Superior Court Department on February 3, 1994.

A motion to suppress evidence was heard by *Margot Botsford,* J.; following trial on the conspiracy counts, a motion to dismiss was heard by *David M. Roseman,* J., and the cases were tried before him.

*Mary Mertz Parnell* for the defendant.

[1]As is our custom, the name of the defendant is as it appears on the indictments. In his testimony, the defendant spelled his name Mendez.

*Eileen M. O'Brien*, Assistant District Attorney, for the Commonwealth.

SMITH, J. On January 15, 1994, a grand jury returned four indictments against the defendant charging him with (1) conspiring with Alex Pedroza and Alex Colon to distribute or to possess with intent to distribute cocaine; (2) possession of cocaine with intent to distribute; (3) conspiracy to possess a firearm without a license; and (4) possession of a firearm without a license. The indictments arose out of the defendant's arrest on December 16, 1993.

Prior to trial, the defendant filed a motion to suppress certain evidence that was seized from his person at the time of arrest. After an evidentiary hearing, the motion was denied.

The substantive charges were severed from the conspiracy charges (the defendant did not move for joinder), see Mass. R.Crim.P. 9(a)(3), 378 Mass. 859 (1979), and the defendant went to trial (without his codefendants) on the conspiracy indictments. The jury acquitted him on those indictments.

The defendant then filed a motion to dismiss the indictments charging the substantive offenses, claiming that prosecution of the indictments was barred by collateral estoppel principles. After a hearing, the motion was denied, and the defendant went to trial before a Superior Court judge and jury.

At the conclusion of the Commonwealth's case, the defendant filed a motion for a required finding of not guilty, arguing that the evidence was insufficient because the Commonwealth was collaterally estopped from proving either constructive possession or joint venture. The motion was denied. The jury subsequently returned guilty verdicts on both indictments.

On appeal, the defendant claims error in the denial of his motion to dismiss the indictments charging the substantive offenses and his motion for a required finding of not guilty. He also contends that his suppression motion should not have been denied.

We examine the evidence introduced at the trial of the substantive offenses, in the light most favorable to the Commonwealth. *Commonwealth* v. *Morris*, 422 Mass. 254, 256 (1996). On December 9, 1993, Sergeant David Chalmers of the Malden police department met with detectives from the Cambridge police department and an agent of the United States Treasury Department's Bureau of Alcohol, Tobacco, and

Firearms (ATF). The purpose of the meeting was to discuss setting up a sting operation involving a trade of guns for drugs.

As a result of the meeting, Chalmers contacted Alex Pedroza through a pager number that had been provided to him by other law enforcement officers. Chalmers posed as a gun dealer from Vermont looking to trade guns for cocaine. Pedroza stated that he was interested in the proposed trade and told Chalmers to contact him the next time he was in town. On December 15, Chalmers called Pedroza again and arranged to meet the following day.

On December 16, the police rented two adjacent rooms at a hotel in Cambridge. Room 902 was set up as the place where Chalmers and the ATF agent would attempt to conduct the trade. Room 903 was to be used as a surveillance room for other police officers.

Once everyone was in place, Chalmers called Pedroza's pager number and dialed in the hotel's telephone number followed by the room number. Pedroza returned Chalmers's page and, after several telephone conversations, Pedroza agreed to meet in Chalmers's hotel room with cocaine to trade for guns. Pedroza informed Chalmers that he would bring another person with him.

A short time later, the officers stationed outside the hotel saw three men approach the building on foot, walking side by side while carrying on a conversation. The officers recognized Pedroza and Alex Colon as two of the men but they did not know the third person, who was the defendant. The officers notified the others stationed inside the hotel that Pedroza and his companion had arrived.

A few minutes later, an officer in room 903 looked out the peephole in the door and saw the three men outside of room 902. Pedroza and Colon entered that room, while the defendant momentarily remained outside. He then walked to the end of the hallway and stood with his back to the wall, looking toward the elevators and stairwells. Soon thereafter he proceeded to walk back and forth in front of room 902, then stood once again at the end of the hallway with his back against the wall. A short time later, the defendant walked out of the view of the officers stationed in room 903. He had been in their view for about four to five minutes.

The officers in room 903 radioed the officers stationed outside the hotel to look for the defendant. He was located on the second

floor, walking away from a public restroom. The officers stopped the defendant and questioned him about his presence in the hotel. The defendant identified himself and told them he was there with friends. The officers conducted a pat frisk for weapons and discerned a pager clipped to his pocket, with the clip part visible on the outside of the pocket. The officers seized the pager, which was the only one recovered from the three men. An officer pressed the playback button on the pager. It displayed the same number that Chalmers had entered earlier in calling Pedroza. That pager was later identified as belonging to Pedroza.

Meanwhile, Pedroza and Colon were negotiating the trade with Chalmers and the ATF agent. Finally, an agreement was reached to exchange two bags of cocaine for three handguns. Once Pedroza and Colon produced the drugs, they were arrested. Among other things, the police seized a cellular telephone from Pedroza.

The theory of the defense was that the defendant met Pedroza and Colon by accident, and that he was not involved with their activities concerning the trade. The defendant testified that, on the day he was arrested, he had been working as a maintenance man for a realty firm. After work, he began walking to Central Square in Cambridge to take the subway to Quincy where he lived. While on route to the station he met two friends of his, Pedroza and Colon. He knew that they did not have jobs and that they sold drugs.

After a brief conversation, Pedroza told the defendant that he and Colon were meeting some friends at a location some three or four blocks away. They said they would only be with their friends for about five or ten minutes, and if the defendant waited they would walk with him to Central Square. The defendant agreed and went with them to the hotel. He accompanied them to the ninth floor where Pedroza handed him his Walkman and pager and told him not to leave. Pedroza and Colon then walked about ten feet in front of the defendant, turned left and disappeared around a corner. After he waited a few minutes, the defendant walked in the direction that the other two had gone. He looked down the corridor toward where they had disappeared. When he did not see them, he walked back down the hallway by the elevators and looked out the window at the Charles River. He subsequently walked back in the direction that Pedroza and Colon had traveled. The defendant testified

that when again he did not see them, he went to the second floor where he sat down and listened to the Walkman. The defendant decided to telephone his wife and tell her he would be arriving home late. According to his testimony, he was on the way to the telephones when police officers stopped him, pat-frisked him, and seized the pager.

1. *Denial of the motion to dismiss the indictments charging substantive offenses.* The defendant argues that the trial on the substantive offenses was barred by the principles of collateral estoppel which are embodied in the Fifth Amendment to the United States Constitution's guarantee against double jeopardy. See *Ashe* v. *Swenson*, 397 U.S. 436, 442, 445-446 (1970).[2]

"The doctrine of collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Commonwealth* v. *Kline*, 19 Mass. App. Ct. 715, 717 (1985), quoting from *Ashe* v. *Swenson, supra* at 443. "[C]ollateral estoppel requires the concurrence of three circumstances: (1) a common factual issue; (2) a prior determination of that issue in litigation between the same parties; and (3) a showing that the determination was in favor of the party seeking to raise the estoppel bar." *Commonwealth* v. *Lopez*, 383 Mass. 497, 499 (1981).

"The doctrine of collateral estoppel may work in two ways. First, it may bar totally a subsequent prosecution if one of the issues necessarily decided at the first trial is an essential element of the alleged crime in the second trial. Second, even if a prosecutor may proceed to a second trial, the doctrine may bar the introduction of certain facts determined in the defendant's favor at the first trial." *Commonwealth* v. *Benson*, 389 Mass. 473, 478, cert. denied, 464 U.S. 915 (1983).

a. *Whether collateral estoppel completely barred the second trial.* The defendant claims that, by his acquittal of the conspiracy charges, the jury necessarily determined that he did

---

[2]The defendant does not claim that the conspiracy and substantive offenses are, in actuality, the same offenses and that, consequently, trials on both · violate double jeopardy. Contrast *Commonwealth* v. *D'Amour*, 428 Mass. 725, 747-749 (1999). In that case, the defendant's trial on conspiracy to commit murder was barred on double jeopardy principles where the defendant was acquitted of the substantive offense of murder which the Commonwealth tried on the theory that she hired another person to kill her husband. The court held that, on those specific facts, the conspiracy was a lesser included offense of the murder.

not enter into a prior plan or agreement with his alleged coconspirators. Because a prior plan or agreement is an essential element in proving a joint venture (the Commonwealth's theory at the second trial), the defendant argues that the second trial was barred.

We agree with the defendant that the formation of an unlawful agreement to further, by concerted action, the accomplishment of a criminal act is an essential element of the crime of conspiracy. *Commonwealth* v. *Trung Chi Truong*, 34 Mass. 668, 672 (1993). However, such an agreement is not an essential element of a joint venture. See *Commonwealth* v. *Benson, supra* at 479 ("Criminal culpability for a substantive offense on the theory of a joint venture is based on elements distinct from those involved in proof of a conspiracy"); *Commonwealth* v. *DeCillis*, 41 Mass. App. Ct. 312, 314 (1996) ("The shared purpose of joint venturers in the commission of a substantive offense differs from the prior agreement to commit the offense that is the essence of a conspiracy"). "As a general rule, it may be said that the agreement that must be shown to prove a conspiracy is a meeting of the minds of the conspirators separate and distinct from and prior to the common intent that is implicit in the commission of the substantive crime." *Commonwealth* v. *DeCillis, supra*. Conversely, there is no "need to show, when joint venture is claimed, that the partners had an antecedent agreement to encompass the commission of the substantive crime." *Commonwealth* v. *Fidler*, 23 Mass. App. Ct. 506, 512-513 (1987). It is "enough that at the climactic moments the parties consciously acted together in carrying out the criminal endeavor, each thereby becoming responsible for the acts of the others. An element of mutual assent at those moments no doubt there is, but there need not have been an anticipatory compact." *Commonwealth* v. *Branch*, 42 Mass. App. Ct. 181, 184 n.3 (1997), quoting from *Commonwealth* v. *Fidler, supra* at 513. Therefore, even if we agree with the defendant that the jury, by acquitting him in the conspiracy trial, found that he did not enter into a prior plan or agreement with his alleged coconspirators, that fact alone does not bar a second trial because proof of a prior agreement is not an essential element of a joint venture to commit the substantive offenses.

b. *Whether collateral estoppel barred introduction of certain facts at the second trial.* The defendant claims that, even if collateral estoppel did not bar the second trial, it did prohibit the

introduction of certain facts determined in his favor at the first trial. The defendant also claims that, because the jury in the conspiracy trial found that he did not enter into an agreement with his coconspirators to act as a lookout, collateral estoppel barred the Commonwealth from introducing any evidence at his second trial which was offered to show that he participated as such, because such evidence necessarily implied that he had entered into a prior agreement with his coconspirators to perform that role.

"[F]acts established against the Commonwealth in the first trial 'may not be used in the second trial . . . as evidentiary facts.' " *Commonwealth* v. *Kline*, 19 Mass. App. Ct. at 718, quoting from *United States* v. *Mock*, 604 F.2d 341, 343 (5th Cir. 1979). In order to determine what issue of fact was decided in the first trial, we must "examine the record of [the defendant's] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe* v. *Swenson, supra* at 444. "The party asserting collateral estoppel has the burden of showing that the jury in the first trial decided a particular question, so as to preclude its being retried to a second jury in the later action." *Commonwealth* v. *DeCillis*, 41 Mass. App. Ct. at 315.

It is clear that the issue of fact determined at the conspiracy trial was that the defendant did not enter into a prior plan or agreement to commit the substantive offenses. Therefore, the Commonwealth was estopped from offering evidence of an agreement in the second trial. However, the Commonwealth was not barred from presenting evidence of the defendant's actions outside of room 902.

As we have stated, conspiracy charges require a factual determination that there was a prior unlawful agreement, but a finding of joint venture requires proof that a defendant "intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime." *Commonwealth* v. *Donovan*, 395 Mass. 20, 26 (1985), quoting from *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973). The Commonwealth's evidence of the defendant's actions on the ninth floor of the hotel was offered to show that he shared the intent with Pedroza and Colon to commit the substantive offenses; it was not evidence of a

prior plan or agreement. See *Commonwealth* v. *Woods*, 414 Mass. 343, 350, cert. denied, 510 U.S. 815 (1993) (defendant's acquittal on charges of operating a motor vehicle while under the influence did not bar evidence that he drank alcohol before driving where it was offered at the second trial to prove negligence, not intoxication); *Commonwealth* v. *Kline*, 19 Mass. App. Ct. at 718-719 (although the defendant was found not guilty of failure to obey a traffic signal, the Commonwealth was not precluded at the de novo trial from showing color of traffic signal at time of accident when issue was negligent operation). Accordingly, collateral estoppel did not bar the introduction of the defendant's actions at the hotel during the trial of the substantive offense.

2. *Denial of the motion for a required finding of not guilty.* The defendant argues that the judge improperly denied his motion for a required finding of not guilty because the evidence was insufficient to prove that he was a joint venturer.

"[A] person who acts as a lookout while others are engaged in a criminal enterprise can be convicted on a joint enterprise theory." *Commonwealth* v. *Ward*, 45 Mass. App. Ct. 901, 902 (1998), quoting from *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 499 n.10 (1991). However, "in order for the Commonwealth to withstand a motion for a required finding of not guilty, it cannot rely on evidence that merely places the defendant at the scene of the crime and shows him to be in association with the principals." *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 411 (1986). "Rather, the Commonwealth must present additional evidence which implicates the defendant in the crime." *Commonwealth* v. *Fuentes*, 45 Mass. App. Ct. 934, 935 (1998).

Here, there was evidence that the defendant entered the hotel with Pedroza and Colon, and all three men went to the ninth floor. The defendant stood outside room 902 facing the elevator bank or pacing the hallway for almost five minutes before proceeding to the second floor. We agree with the defendant that this evidence, by itself, may not have been enough to warrant a finding of guilty. *Commonwealth* v. *Saez, supra* at 412. However, there is additional evidence that is sufficient to withstand a motion for a required finding of not guilty.

The defendant remained on the ninth floor for almost five minutes. It may be inferred that he was there to warn Pedroza and Colon if he saw something suspicious in the hallway, or to

enter room 902 and assist them if anything went wrong with the trade. He had Pedroza's pager with him so the other two could page him if they needed his assistance; that pager still displayed Chalmers's coded message to Pedroza. Further, the fact that Pedroza and Colon purchased three guns bolsters the Commonwealth's theory that the defendant was a joint venturer in the drugs for guns trade; there would have been a gun for each of the men involved — Pedroza, Colon, and the defendant.

The evidence in this case supports the inference that the defendant's role in the joint enterprise was to act as a lookout. Accordingly, the judge properly denied the defendant's motion for a required finding of not guilty.

3. *Denial of the defendant's suppression motion.* The defendant argues that the police did not have probable cause to arrest him, and therefore the motion judge committed error in denying his motion to suppress the pager and the message it contained. We reject the defendant's claim.

"Probable cause to arrest exists where the facts and circumstances in the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed." *Commonwealth* v. *Williams*, 422 Mass. 111, 119 n.11 (1996). The officers who arrested the defendant were engaged in a cooperative effort with the officers in the surveillance room on the ninth floor. We therefore evaluate probable cause on the basis of the collective information of all the officers. *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982).

At the time that the defendant was arrested, the officers knew that he had arrived at the hotel with two known drug dealers. See *Commonwealth* v. *Ortiz*, 376 Mass. 349, 354 (1978) (association with known drug dealer is a valid factor in determining probable cause). Further, the defendant did not wait in the lobby, but instead accompanied them to the ninth floor where the trade was to take place. Once there, he was observed for several minutes pacing the corridor outside the room used for the trade, in a manner consistent with a lookout. When the police subsequently stopped the defendant, they found a pager clipped to his pants pocket; a pager had been used to set up the trade. We agree with the motion judge that when the officers stopped the defendant on the second floor of the hotel, they had probable cause to believe that the defendant was acting as a

lookout for Pedroza and Colon while they conducted their trade. Therefore, the pager was lawfully seized from the defendant.

A search conducted incident to a lawful arrest may be made for the purpose of seizing fruits and evidence of the crime for which the arrest was made. *Commonwealth* v. *Clermy*, 421 Mass. 325, 330 (1995). Here, the police were aware that a pager had been used to set up the date, time, and place of the illegal trade.

Because the police had probable cause to arrest the defendant, they could seize the pager as it contained evidence of the crime for which the arrest was made. *Commonwealth* v. *Clermy*, *supra.* Consequently, the police could read the message on the pager without obtaining a warrant.

*Judgments affirmed.*