## COMMONWEALTH vs. DENIZ DEPINA.[1]

No. 08-P-1140.

Suffolk. June 3, 2009. - December 8, 2009.

Present: MILLS, GREEN, & SIKORA, JJ.

*Constitutional Law,* Search and seizure, Probable cause, Confrontation of witnesses. *Search and Seizure,* Warrant, Probable cause. *Probable Cause. Controlled Substances. Evidence,* Hearsay, Certificate of drug analysis.

A Superior Court judge properly concluded that a search warrant authorized police officers to seize a cellular telephone from the defendant, and denied the defendant's pretrial motion to suppress, where the officers reasonably could have inferred, having found the telephone on the defendant's person, that it was an implement used in illegal drug distribution, the seizure of which was authorized by the warrant [847-848]; further, where the information contained in the application for the search warrant provided probable cause to arrest the defendant, the officers could lawfully search the telephone by answering a call made to it by an unidentified person [848-849]; moreover, at the trial of indictments charging the defendant with trafficking in cocaine in a school zone, the judge properly admitted, as evidence of the nature of the cellular telephone as an instrument used in cocaine distribution, the substance of the telephone conversation between one police officer and the unidentified caller [850-851].

At the trial of indictments charging trafficking in cocaine in a school zone, the erroneous admission in evidence of drug analysis certificates without testimony from the analysts, in violation of the defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him, was not harmless beyond a reasonable doubt, where, apart from the certificates, no evidence substantiated the weight of the suspected cocaine, an essential element of the crime, and where the certificates were the strongest evidence that the substance seized from the defendant by officers was cocaine. [851-854]

At a criminal trial, ample evidence of constructive possession supported the defendant's convictions of trafficking in cocaine and of doing so in a school zone. [854]

INDICTMENTS found and returned in the Superior Court Department on June 12, 2006.

---

[1] As is our custom, we spell the defendant's name as it appears in the indictments.

A pretrial motion to suppress evidence was heard by *Frank M. Gaziano,* J., and the cases were tried before *Patrick F. Brady,* J.

*Kathleen M. O'Connell* for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney (*Yaw Gyebi, Jr.,* Assistant District Attorney, with him) for the Commonwealth.

SIKORA, J. A Superior Court jury convicted the defendant, Deniz DePina, of trafficking in cocaine in a school zone. The defendant appeals upon claims that (1) a search warrant did not authorize seizure of his cellular telephone, (2) a police officer unlawfully searched the cellular telephone by answering a call, (3) the trial judge erroneously admitted in evidence the substance of the officer's conversation with the caller, (4) the admission of certificates of drug analysis without the analyst's testimony violated his right to confrontation under the Sixth Amendment to the United States Constitution, and (5) the convictions lacked the support of sufficient evidence of constructive possession (the theory upon which the Commonwealth proceeded). Only the claim related to the certificates of analysis has merit. Under the United States Supreme Court's recent decision in *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009), admission of the certificates of analysis without supporting testimony was a violation of the confrontation clause of the Sixth Amendment. Because we conclude that the erroneous admission of the certificates was not harmless beyond a reasonable doubt, we reverse. We address the defendant's other arguments because they are likely to recur at any retrial.

*Procedural background.* A grand jury indicted the defendant for trafficking in cocaine (fourteen grams or more but less than twenty-eight grams) in violation of G. L. c. 94C, § 32E(*b*)(1), and for doing so in a school zone, in violation of G. L. c. 94C, § 32J. The defendant filed a motion to suppress evidence obtained by police through the seizure of his cellular telephone. A Superior Court judge denied the motion. A second Superior Court judge presided over the defendant's jury trial. The defendant moved in limine to exclude statements made by an unidentified person who had called the defendant's cellular telephone during the execution of a search warrant and had unknowingly spoken to a police officer answering the phone. He moved also in limine to

exclude certificates of analysis of cocaine. He argued that admission of the certificates without the testimony of the chemist who had created them would violate his Sixth Amendment right to confront adverse witnesses. The trial judge denied both motions. During the trial, the defendant renewed his objections to the challenged evidence.

The defendant moved for a required finding of not guilty at the close of both the Commonwealth's evidence and all the evidence. The judge denied both motions.[2]

*Factual background.* 1. *Search warrant application.* Officer Kevin Jones of the Boston police department signed the affidavit in support of the search warrant application. His affidavit included the following information. In early 2006, a confidential informant under his supervision made a series of controlled buys in the third-floor apartment of 59 Burrell Street in the Roxbury section of Boston. On each occasion, the informant entered the building without narcotics in his[3] possession and emerged with crack cocaine. Less than three days prior to the application for the search warrant, the informant made the last controlled buy. Through a window, officers observed him climb the stairs to the third floor of the building.

The informant identified the defendant as the person who had sold him the cocaine. The informant related also that, prior to the controlled buys, he had purchased crack cocaine from the defendant at the same third-floor apartment of 59 Burrell Street. The informant had reported also that the defendant had used a Chrysler Sebring convertible automobile to deliver crack cocaine to him (the informant) and "to various locations in and around Boston."

Officers learned through surveillance of 59 Burrell Street that, on numerous occasions, people entered the building, ascended the stairs, and left the building after a short period of time. Officer Jones characterized this activity as consistent with narcotics purchases. During their surveillance, officers never observed

[2]Upon the verdicts, the judge sentenced the defendant to three years to three years and one day in State prison for trafficking and to a consecutive sentence of two years in the house of correction for the school zone violation.

[3]Officer Jones intentionally withheld the informant's gender in order to protect the informant's identity. For ease of reference, we use masculine pronouns to refer to the informant.

lights or any activity inside the second-floor apartment but consistently observed both inside the third-floor apartment. Therefore Officer Jones believed that the people observed climbing the stairs had visited the third-floor apartment. Officers saw the defendant enter and leave the building numerous times.

A clerk magistrate of the Boston Municipal Court issued a search warrant for the third-floor unit. The warrant authorized a search of the apartment for the following: "Crack Cocaine . . . all books, papers, records, documents, currency, *implements*, paraphernalia, (as defined by G. L. c. 94C), . . . *related to the illegal possession, manufacture, or distribution of cocaine*; [and] any implement used for the cutting, weighing, cooking, storage, or bagging of cocaine." (Emphasis supplied.) It authorized also the search of the defendant's person.

2. *Motion to suppress evidence.* For the purpose of the hearing upon the motion to suppress, the parties stipulated to the truth of the grand jury testimony relating to the execution of the warrant. The motion judge found that, on the day after issuance of the warrant, police officers had watched the defendant park the Chrysler Sebring across from 59 Burrell Street and get out of the automobile; the officers then had approached the defendant, informed him of the warrant, and had taken his cellular telephone and house keys from him. The judge found that the cellular telephone had rung continuously as the officers searched the apartment, that one of the officers had answered a call, and that the caller had asked for a "big fifty," a term for fifty dollars worth of crack cocaine.

3. *Evidence at trial.* The jury could have found as follows. Officer Jones had surveilled 59 Burrell Street about ten times prior to execution of the warrant. The structure was a three-story dwelling with a separate apartment on each floor. He had seen a white Chrysler Sebring convertible parked in front of the building on multiple occasions and had seen the defendant enter and leave the car more than once.

At about 5:00 P.M. on February 8, 2006, and with the warrant, Jones and other officers parked near the building and waited for the defendant to arrive. They saw no one enter or leave while they waited. After an interval of twenty or thirty minutes, the defendant parked the white Chrysler Sebring convertible across

the street, left the car, and walked toward the building with a set of keys in one hand. The officers met him in front of the building and informed him of the warrant. He told them that he did not live at the address and that he had come there to work in the second-floor apartment. The defendant then looked toward the third floor of the building and yelled repeatedly, "[H]ey, hey, hey." Sergeant Detective Paul Murphy took the keys from the defendant's hand and another officer handcuffed him. Officer England found two cellular telephones on the defendant's person and seized them.

Officer Murphy used one of the defendant's keys to unlock the building's main door. The officers then went to the third floor and Murphy knocked on the door to the apartment and announced his presence. He received no response, so he used another of the defendant's keys to open the door. A group of men were inside the apartment watching television. The unit contained three bedrooms. An elderly couple were in one of the bedrooms; the officers did not search it.

The officers searched only one of the three bedrooms. Its door was locked. Officer Murphy again used one of the defendant's keys to unlock it. The bedroom contained a bed, a small bureau, an end table with a television on it, and a small closet. The closet contained a pair or two of men's pants, one or two men's shirts, and some baseball caps. An officer opened a drawer in the end table and found a large bag which contained 13.25 grams of apparent crack cocaine. He found also a plastic bag which contained seven smaller plastic bags of apparent crack cocaine. A total of .99 grams of the substance was in the smaller bags. The drawer also held two boxes of sandwich bags and a third plastic bag with numerous cut plastic bags inside of it. Two razor blades and a box of baking soda were on the bureau.

During the search, one of the defendant's cellular telephones rang several times. Officer England answered one of the calls and the caller asked him for "a big fifty." Officer England told the caller to stop by the apartment to pick up the "big fifty" and the caller replied, "Okay."

At trial, Officer Paul Quinn offered the following expert testimony about cocaine distribution. Cocaine distributors sometimes use cut sandwich bags to package crack cocaine. Dealers use baking soda as an ingredient of crack cocaine and razor

blades to cut it. Cellular telephones are a common tool of the cocaine distributor. Buyers often ask for cocaine over the phone without using the word "cocaine." Distributors sell crack cocaine in "twenties," "forties," "fifties," and "eight balls." A "fifty" is .5 grams of crack cocaine and costs fifty dollars. Twelve to fourteen grams would be an unusually large purchase for personal use.

*Discussion.* 1. *Seizure of the cellular telephone.* The defendant argues that the seizure of a cellular telephone from his person was unlawful because the search warrant did not specifically authorize a search for phones. He asserts that a cellular telephone was not an "implement[] . . . related to the illegal possession . . . or distribution of cocaine," for which the warrant authorized a search. The motion judge concluded that the phone was an implement of drug distribution, because, in light of the facts gathered in Officer Jones's affidavit, it was reasonable for the officers to infer that the defendant used a cellular telephone to communicate with the buyers to whom he delivered cocaine. The motion judge ruled that the search warrant authorized the officers to seize the phone.[4] We agree.

From the facts found by the judge, we "make an independent determination of the correctness of the judge's application of constitutional principles." *Commonwealth* v. *Mercado,* 422 Mass. 367, 369 (1996). The warrant's description of the items to be seized determines "[t]he permissible intensity of a search." *Commonwealth* v. *Wills,* 398 Mass. 768, 774 (1986). The degree of specificity of the description may "vary according to the circumstances and type of items involved." *Commonwealth* v. *Freiberg,* 405 Mass. 282, 298, cert. denied, 493 U.S. 940 (1989), quoting from *United States* v. *Johnson,* 541 F.2d 1311, 1314 (8th Cir. 1976).

The informant told Officer Jones that the defendant had used a specific car to deliver crack cocaine to the informant and "to various locations in and around Boston." Officer Jones confirmed that the defendant used the car, and the officers saw the defendant park it prior to their execution of the warrant. As the motion

---

[4]As a valid alternative basis for his conclusion, the motion judge reasoned that the officers lawfully seized the phone by a search incident to arrest. See *Commonwealth* v. *Prophete,* 443 Mass. 548, 552 (2005) (custodial arrest provides justification for a search for "evidence of the crime for which the arrest was made"). He determined that the phone was evidence of drug distribution.

judge found, "It was reasonable for the police officers to infer that [the defendant] somehow communicated with his buyers prior to delivery." Multiple decisions recognize cellular telephones as implements of the drug trade. See, e.g., *Commonwealth v. Perryman*, 55 Mass. App. Ct. 187, 197 n.4 (2002) (cellular telephone is a "traditional accoutrement[] of the illegal drug trade"); *Commonwealth v. Grissett*, 66 Mass. App. Ct. 454, 455 (2006) (cellular telephone is an item "often associated with the drug distribution trade"); *Commonwealth v. Stegemann*, 68 Mass. App. Ct. 292, 300 (2007) (cellular telephones are one of "the usual implements of the trade"). Once the officers found the phone on the defendant, they could have reasonably inferred that it was an implement used in drug distribution. Therefore we conclude that the search warrant authorized the seizure of the defendant's cellular telephone as an implement of illegal drug distribution. The motion judge properly concluded that the officers' seizure of the phone was lawful.[5]

2. *Answer of call to cellular telephone.* The defendant argues that Officer England unlawfully searched his cellular telephone when the officer answered the unidentified person's call. For this argument, the defendant relies upon his previously discussed assertion that the search warrant did not authorize the seizure of the phone. We concluded above that the search warrant authorized the seizure of the phone. However, we must consider also whether the officer could search the phone once he had seized it.

In *Commonwealth v. Mendes*, 46 Mass. App. Ct. 581 (1999), police officers seized a pager from the defendant, who, as an apparent lookout, was pacing outside a room which the police had prepared for a sting operation involving an exchange of contraband. *Id.* at 584, 589. An officer pressed the playback button on the pager and the pager displayed the number entered earlier by a police officer in order to set up the sting. *Id.* at 584. Thus, the officers were aware that the pager had been used to set up the exchange. *Id.* at 584, 590. Upon the basis of a variety of factors, see *id.* at 589-590, we held that the police had probable cause to arrest the defendant, and therefore that "they could seize the pager as it contained evidence of the crime for

---

[5]Although testimony at trial indicated that police had found two cellular telephones on the defendant's person, the testimony at the motion hearing referred to a single telephone.

which the arrest was made." *Id.* at 590. See *Commonwealth* v. *Clermy*, 421 Mass. 325, 330 (1995), quoting from *Commonwealth* v. *Santiago*, 410 Mass. 737, 742 (1991) ("search may precede a formal arrest . . . 'as long as probable cause [to arrest] existed independent of the results of the search' "). We held also in *Mendes* that, because they had probable cause to arrest, the police did not need a warrant to read the message on the pager. 46 Mass. App. Ct. at 590.

The officer's search of the pager in *Commonwealth* v. *Mendes*, *supra* at 584, is analogous to Officer England's receipt of the phone call. The officers here had probable cause to arrest the defendant for distribution of cocaine. See *Commonwealth* v. *Williams*, 422 Mass. 111, 119 n.11 (1996) ("Probable cause to arrest exists where the facts and circumstances in the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed"). The timing of the search prior to the arrest of the defendant does not matter because the information collected in the application for the search warrant provided the police with probable cause to arrest the defendant before they searched his telephone by listening to the call. See *Commonwealth* v. *Prophete*, 443 Mass. 548, 553 (2005), quoting from *Commonwealth* v. *Santiago*, *supra*. Just as the officer in *Mendes* could lawfully search for evidence through inspection of the defendant's pager, the officers here could search the defendant's cellular telephone for evidence of the crime for which he was arrested, cocaine distribution. When Officer England answered the phone, he performed such a search.

In contrast to *Mendes*, where the officers did not have a search warrant authorizing a seizure of the pager or a search of its contents, the officers here had a warrant authorizing seizure of the defendant's cellular telephone. The warrant provides additional support for the officers' authority to search the phone, because the phone was an implement very probably used in the distribution of cocaine. The police could reasonably infer the frequency of the calls to be an indication of requests for distribution. They performed the search of the seized phone contemporaneously with, or promptly after, the execution of the warrant. The judge properly denied the defendant's motion to suppress his cellular telephone and the information drawn from the phone.

3. *Admissibility of telephone conversation.* The defendant argues that the trial judge wrongly admitted, over his objection, the substance of Officer England's telephone conversation with the unidentified caller. He characterizes the words spoken as inadmissible hearsay. The trial judge ruled that the caller's request for "a big fifty" was not an assertion and therefore not hearsay. We review the admission of the conversation in evidence for prejudicial error because the defendant objected to it. See *Commonwealth* v. *Evans*, 439 Mass. 184, 190, cert. denied, 540 U.S. 923, 973 (2003).

In *Commonwealth* v. *Washington*, 39 Mass. App. Ct. 195 (1995), this court concluded that a police officer's conversations with persons who had called a defendant's beeper were admissible against an accused trafficker as evidence of the character of the beeper as an instrument of the charged crime. *Id.* at 199-201. The court reasoned that the conversations were similar to those in *Commonwealth* v. *Massod*, 350 Mass. 745 (1966), and *Commonwealth* v. *Jensky*, 318 Mass. 350 (1945). *Commonwealth* v. *Washington, supra* at 200. In those cases, police conversations with unknown people seeking to place bets over the telephone were admissible as evidence of use of the telephones for gambling activity. *Ibid.,* citing *Commonwealth* v. *Massod, supra* at 747-748, and *Commonwealth* v. *Jensky, supra* at 352-354. The *Jensky* court noted that the case was analogous to *Commonwealth* v. *Kimball*, 7 Gray 328, 330 (1856), in which conversations of occupants of a house were admissible to show the character of the dwelling in a prosecution for keeping a house of ill fame. *Commonwealth* v. *Jensky, supra* at 352. This line of authority controls the admissibility of the telephone conversation in this case. The conversation here was admissible as evidence of the nature of the cellular telephone as an instrument used in cocaine distribution.[6]

The defendant notes that his theory of defense was lack of

---

[6]In *Commonwealth* v. *Washington, supra,* we cited also the analysis of such statements in Liacos, Massachusetts Evidence § 8.2.3 (6th ed. 1994). There, we observed:

"Such conversations are treated as nonhearsay 'in spite of the fact that the implications of the declarations must be believed for the declarations to have probative value.' [That treatise] classifies these [statements as] extrajudicial conversations . . . admitted into evidence to prove the nature of a place or thing associated with the conversation. [It

proof of constructive possession and he asserts that the caller's request was probative only of intention to distribute and not constructive possession. We disagree. Although the caller's request for "a big fifty" was probative of the defendant's involvement in cocaine distribution, it was also probative of his constructive possession of the cocaine. Distribution of a "big fifty" would increase the probability that the distributor already possessed it, actually or constructively.

4. *Certificates of analysis.* At trial, the Commonwealth submitted two State laboratory certificates of analysis identifying the rocks seized by police as cocaine and measuring the total weight of the rocks as just over fourteen grams. The judge admitted the certificates in evidence over the defendant's objection. The defendant argued during trial, and reasserts now, that admission of the certificates without testimony from the analysts violated his right under the Sixth Amendment to the United States Constitution to confront the witnesses against him. Under Massachusetts case law at the time of trial, the certificates were admissible without the support of testimony. See *Commonwealth* v. *Verde*, 444 Mass. 279, 284-285 (2005). However, since the trial, the United States Supreme Court has explicitly ruled that admission of such certificates without testimony from the authoring analyst violates the Sixth Amendment right to confrontation. *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532, 2542 (2009). The defendant preserved the issue through his objection. We review a preserved constitutional error to determine whether it was harmless beyond a reasonable doubt. See *Chapman* v. *California*, 386 U.S. 18, 24 (1967). "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 23, quoting from *Fahy* v. *Connecticut*, 375 U.S. 85, 86-87 (1963). Put differently, the question is whether the erroneous admission of the drug

---

identifies] 'a patent absence of a motive to falsify on the part of the declarant' [as another characteristic of such statements]."

39 Mass. App. Ct. at 200, quoting from Liacos, *supra.*

The improbability of falsehood, or the guilelessness of an unwary statement to a receiving device, may further explain the exemption of such statements from the character of untrustworthy hearsay. See *id.* at 201 n.2 (summarizing the rationales of Federal authorities for admission of such statements in gambling and drug prosecutions).

certificates "did not influence the jury, or had but very slight effect." *Commonwealth* v. *Diaz*, 453 Mass. 266, 275 (2009), quoting from *Commonwealth* v. *Gilday*, 382 Mass. 166, 178 (1980).

To prove the trafficking offense, the Commonwealth had to prove beyond a reasonable doubt that the substance seized by the officers was cocaine and that it weighed "fourteen grams or more." See *In re Winship*, 397 U.S. 358, 364 (1970) (prosecution bears burden of proof beyond a reasonable doubt of every element of an offense); G. L. c. 94C, § 32E(*b*). "[T]he Commonwealth must prove that a substance is a particular drug either by chemical analysis or by circumstantial evidence." *Commonwealth* v. *McGilvery*, 74 Mass. App. Ct. 508, 511 (2009).

Apart from the certificates, no evidence substantiated the weight of the suspected cocaine. Without the certificates, the Commonwealth did not carry its burden of proof of the quantitative element of trafficking. *Commonwealth* v. *Rodriguez, ante* 235, 242 (2009). The certificates reported the total weight of the cocaine to be 14.24 grams, or only .24 grams above the minimum needed for the offense of trafficking. They would serve as the only reliable evidence of an essential element of the crime. The jury could not feasibly distinguish the critical fraction of a gram separating guilt from innocence of the trafficking charge by observation of the exhibits in the deliberation room. Our evidence therefore differs from the circumstance in *Commonwealth* v. *Connolly*, 454 Mass. 808, 832 (2009), in which the jury could find "that a large, hard ball [of cocaine] weighed more than four ounces."

Proof that the rocks were cocaine, however, is a closer question. The officer who recovered the rocks testified that he believed the substance to be cocaine. Other than his statement, "I've seen crack cocaine probably a thousand times," the officer did not testify to any other training or experience on which he based his belief. The judge did not make the required finding, prior to the testimony, that the officer's experience permitted him to offer an opinion that the substance was cocaine. See *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987).

Concededly, considerable circumstantial evidence indicated that the rocks were cocaine. The officers found the rocks in a sparsely furnished locked room, a circumstance permitting the

inference that the room may have been more distribution office than bedroom. The packaging of the rocks and their proximity to distribution paraphernalia were further evidence that they were cocaine. Officer Quinn's expert testimony about cut sandwich bags, baking soda, and razor blades provided more circumstantial evidence. Additionally, the jury could have interpreted the defendant's conduct when approached by the officers as consciousness of guilt. Finally, the constant ringing of the phone, and the caller's request for "a big fifty," could qualify as not only evidence of distribution but also evidence of the cocaine nature of the rocks.

Nonetheless, we cannot conclude that admission of the certificates had only a very slight effect on the jury. See *Commonwealth* v. *Diaz*, 453 Mass. at 275. The certificates were the strongest evidence that the rocks were cocaine. "[T]here is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman* v. *California*, 386 U.S. at 23, quoting from *Fahy* v. *Connecticut*, 375 U.S. at 86-87. *Melendez-Diaz* requires us to reverse the convictions.

Finally, in a case of the present kind in which the sole primary charge is a weight-based offense of trafficking,[7] the elimination of the certificate as the only reliable evidence of the weight of the contraband would by itself invalidate that conviction.

In a supplemental brief submitted after publication of the *Melendez-Diaz* decision, the Commonwealth places much significance on the defendant's closing argument and its omission of any challenge to the nature of the substance as "drugs" and "crack cocaine." The Commonwealth argues that the character of the substance was undisputed at trial and that, therefore, erroneous admission of evidence of its nature was harmless.

We cannot agree that the defendant willingly left the issue uncontested. His counsel preserved the issue through submission of a motion in limine and objection at trial. After the trial judge's ruling (in reliance on pre-*Melendez-Diaz* case law, see *Commonwealth* v. *Verde*, 444 Mass. at 284-285), that the certificates were admissible without supporting testimony, it would have been futile, or even self-defeating in the eyes of the jury, for

---

[7]For cocaine and heroin, G. L. c. 94C, §§ 32E(b)(1)-(4), and (c)(1)-(4), set out substantial minimum mandatory sentences graduated respectively by amounts within the ranges of fourteen to twenty-eight grams, twenty-eight to one hundred grams, one hundred to 200 grams, and 200 grams or more.

defense counsel to argue that the material seized was not crack cocaine, when the jury had received strong and seemingly proper evidence to the contrary in the form of the certificates. See *Commonwealth* v. *Hollister, ante* 729, 732 (2009).

5. *Sufficiency of the evidence.* Finally, the defendant argues that the Commonwealth did not present sufficient evidence of constructive possession to support his convictions. We employ the familiar standard from *Commonwealth* v. *Latimore*, 378 Mass. 671 (1979), and examine the record "in the light most favorable to the prosecution." *Id.* at 677. We need not repeat the abundance of evidence from which the jury could have inferred that the defendant had "knowledge of the contraband and the ability and intention to exercise dominion and control over it." *Commonwealth* v. *Ortega*, 441 Mass. 170, 174 (2004) (describing elements of constructive possession). Ample evidence supported this element of the verdict. Possibly the most significant evidence of constructive possession was testimony that the defendant possessed keys to the building's main door, the apartment's front door, and the door to the bedroom.

*Conclusion.* For the foregoing reasons we conclude that the motion judge properly denied the defendant's motion to suppress evidence. We conclude also that the trial judge properly admitted the substance of the police officer's conversation with the unidentified caller. Finally, we conclude that the erroneous admission of certificates of drug analysis requires reversal of the convictions.

*Judgments reversed.*

*Verdicts set aside.*